# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00549-SCT

*BILL WYSSBROD d/b/a W.W. COMPANIES*

*v.*

*JACKSON H. WITTJEN AND FIRST STATE BANK OF HOLLY SPRINGS, MISSISSIPPI*

### CONSOLIDATED WITH

### NO. 1999-CA-00777-SCT

*MARTIN AUSSENBERG*

*v.*

*JACKSON H. WITTJEN AND FIRST STATE BANK OF HOLLY SPRINGS, MISSISSIPPI*

### CONSOLIDATED WITH

### NO. 1999-CA-01461-SCT

*OMAR D. CRAIG, BILL WYSSBROD d/b/a W.W. COMPANIES AND MARTIN AUSSENBERG*

*v.*

*JACKSON H. WITTJEN AND FIRST STATE BANK OF HOLLY SPRINGS, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/23/1999 |
| TRIAL JUDGE: | HON. GEORGE B. READY |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES WELCH |
| | OMAR D. CRAIG |
| ATTORNEYS FOR APPELLEES: | WILLIAM P. MYERS |
| | ROBERT P. CHAMBERLIN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED; AFFIRMED AS MODIFIED; REVERSED AND RENDERED - 02/08/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/1/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This case comes to this Court on appeal from a judgment of the Circuit Court of DeSoto County wherein Omar D. Craig and Martin Aussenberg represented Quality Pallets, Inc. and William Wyssbrod in a civil action against Jackson H. Wittjen and First State Bank of Holly Springs of DeSoto County. Circuit Judge George B. Ready sanctioned Aussenberg for failing to appear at a scheduled status hearing. The circuit court awarded attorney's fees and expenses to the defendants to be paid by Wyssbrod and Aussenberg pursuant to the Litigation Accountability Act. The trial court also found that Aussenberg and Craig were paid with corporate funds without corporate approval and ordered them to disgorge their fees. Craig, Aussenberg, and Wyssbrod have appealed to this Court, and the three appeals have been consolidated.

¶2. We affirm the circuit court's sanctions against Aussenberg, but reduce the award in accordance with Miss. Code Ann. § 9-1-17 (Supp. 2000). We affirm the lower circuit court's award of attorney fees and expenses under the Litigation Accountability Act. But, we reverse and render the judgment against Aussenberg and Craig for disgorgement of corporate funds.

## STATEMENT OF FACTS

¶3. In order to review the basis for the various orders and judgments appealed in this case, it is necessary to detail the complex and labored history of both the underlying case and the sanctions proceedings. The factual background in this case is as follows:

¶4. On November 1, 1994, William Wyssbrod and Jack Wittjen entered into a pre-incorporation agreement to form Quality Pallets, Inc. ("QPI"). Wyssbrod and Wittjen were the two major shareholders of QPI, each owning fifty percent of the shares outstanding, and Wyssbrod was president of the corporation. According to the pre-incorporation agreement, QPI was to be managed by W.W. Companies, Inc. ("WWC"), a sole proprietorship owned by Wyssbrod. A bank account was maintained at First State Bank of Holly Springs on behalf of QPI.

¶5. The pre-incorporation agreement provided that Wittjen would "provide working capital of approximately $6,000 cash, $60,000 accounts receivable, and additional monies at his discretion, necessary to get the business started until [QPI had] its own working capital to run or [could] borrow money on its own without having to ask for the signature of Jack Wittjen." The cause of action asserted by Wyssbrod arose from Wittjen's agreement to provide working capital for the new corporation, in which Wittjen allegedly agreed to cover checks on behalf of QPI when there were insufficient funds in QPI's account at First State Bank. Wittjen initially covered bad checks written on the account, but then gave notice to Wyssbrod that he would no longer cover bad checks by letter dated May 5, 1995.

¶6. On June 19, 1995, Wyssbrod, individually and derivatively on behalf of QPI and WWC, filed a complaint in the Circuit Court of DeSoto County against Wittjen and First State Bank. The complaint alleged tortious breach of contract, bad faith, and interference with business relations and requested that the circuit court enjoin First State Bank from returning checks issued on QPI's account and Wittjen from refusing to fund the overdrafts.

¶7. On June 20, 1995, the circuit court issued the requested temporary restraining order, but because

Wyssbrod failed to post the $8,000 bond, the restraining order never took effect. The restraining order was dissolved by agreement of the parties and an order entered on July 10, 1995.

¶8. At the time the initial complaint was filed, the plaintiffs were represented by Martin H. Aussenberg, a member of the Tennessee bar. Leigh A. Rutherford served as Mississippi counsel for the plaintiffs until November 1995, when Sidney Beck was substituted for Rutherford. Beck requested and was allowed to withdraw in January 1996, and was replaced by Omar D. Craig.

¶9. An amended complaint was later filed, naming QPI and WWC as plaintiffs. Wyssbrod was not listed as a plaintiff on the second complaint. On June 10, 1996, a third and final amended complaint was filed naming QPI and Wyssbrod, d/b/a/ WWC, as plaintiffs. Wittjen asserted a counterclaim for dissolution of QPI, and First State Bank counterclaimed against QPI and Wyssbrod for recovery of the amounts of the overdrafts.

¶10. On October 18, 1996, the circuit court entered a scheduling order in which it directed QPI, through Wyssbrod, to report all business transactions of QPI to Wittjen's counsel on fourteen-day intervals. By order dated January 16, 1997, the court found that Wyssbrod had failed to provide a current set of corporate records as previously ordered by the court. The court found Wyssbrod in contempt and entered sanctions against him in the amount of $1,000. The court stated that the sanctions were to be paid from Wyssbrod's personal funds and not from the funds of QPI.

¶11. On January 27, 1997, the court ordered that the parties and counsel appear for a status conference on January 30, 1997. On January 30, 1997, Wyssbrod filed a motion for relief from the order sanctioning Wyssbrod. Wyssbrod also filed, on that same day, a Motion to Dismiss Complaint and Counterclaims based on the filing of a bankruptcy petition by QPI that morning. The status conference was held despite the filing of the bankruptcy petition. Aussenberg did not appear at the conference. The court found that its previous sanctions against Wyssbrod were more appropriately placed on Aussenberg. The court then ordered that Aussenberg, rather than Wyssbrod, pay the $1,000 in sanctions. Pursuant to the court's order of February 18, 1997, the case was stayed pending the outcome of the bankruptcy proceedings.

¶12. On April 1, 1998, the bankruptcy court entered an Order and Notice of Dismissal of Adversary Proceeding of State Court Actions Removed to U.S. Bankruptcy Court and Abandonment of Property. The order dismissed the suit of QPI against Wittjen and First State Bank and assigned any remaining claims of QPI to Wittjen. The action proceeded in the circuit court in September 1998.

¶13. Wittjen and First State Bank filed motions for summary judgment. On January 5, 1999, the circuit court granted summary judgment in favor of Wittjen and First State Bank. The court noted that all claims of QPI against Wittjen and First State Bank were dismissed by order of the bankruptcy court. The court dismissed with prejudice all claims of Wyssbrod against Wittjen and First State Bank. The court entered judgment in favor of First State Bank on its counterclaim against Wyssbrod. The court awarded First State Bank attorney's fees and expenses pursuant to the contract between the parties and awarded the same to Wittjen pursuant to Miss. Code Ann. § 79-4-7.46 (1996), stating that the action was without reasonable cause. The court found that Wyssbrod's complaints were filed without substantial justification entitling Wittjen and First State Bank to recover attorney's fees and expenses pursuant to the Litigation Accountability Act of 1988, Miss. Code Ann. § 11-55-5(1) (Supp. 2000). The court also stated that Wyssbrod had no authority to expend corporate funds to retain counsel for the benefit of the corporation or for himself individually and found that Wittjen was entitled to judgment against Wyssbrod in an amount equal to the corporate funds expended to pay attorney's fees.

¶14. The court held a hearing on January 19, 1999, to determine the reasonable and necessary expenses and attorney's fees incurred by Wittjen and First State Bank and to determine whether Wyssbrod's attorneys should be personally liable for any of the fees and expenses. In the resulting order of the court, the court considered each factor of Miss. Code Ann. § 11-55-7 and concluded that Wyssbrod and Aussenberg should be jointly and severally liable to First State Bank and Wittjen for attorney's fees and expenses because the Third Amended Complaint was filed without substantial justification. Fees and expenses were awarded to First State Bank in the amount of $25,724.38 and to Wittjen in the amount of $47,870.64.

¶15. The court also entered judgment against Wyssbrod in the amount of $43,212.75, representing the amount of corporate funds expended by Wyssbrod without corporate authority. The court held Wyssbrod jointly and severally liable to Wittjen, who had been assigned the claims of QPI by the bankruptcy court, along with Aussenberg, Craig, and Beck for the amounts received by each as attorney's fees: Aussenberg in the amount of $27,662.42, Craig in the amount of $14,550.30, and Beck in the amount of $1,000.

¶16. Wyssbrod, Aussenberg, and Craig timely filed notices of appeal from the final judgment of the circuit court. The appeals have been consolidated, and the issues raised by Aussenberg and Craig are set out below:

> **I. THE CIRCUIT COURT ERRED IN AWARDING SANCTIONS AGAINST AUSSENBERG.**
>
> **II. THE CIRCUIT COURT ERRED IN AWARDING ATTORNEY'S FEES AND EXPENSES AGAINST AUSSENBERG PURSUANT TO THE LITIGATION ACCOUNTABILITY ACT.**
>
> **III. THE CIRCUIT COURT ERRED IN ENTERING JUDGMENT AGAINST AUSSENBERG AND CRAIG FOR CORPORATE FUNDS PAID TO THEM AS ATTORNEY'S FEES.**

Wyssbrod has filed no brief with this Court. In fact, Wyssbrod has filed a letter with this Court stating that he does not wish to file an appeal. No arguments have been made to this Court on Wyssbrod's behalf, and none are here considered.

## STANDARD OF REVIEW

¶17. This Court reviews a trial court's imposition of sanctions for abuse of discretion. *Kinard v. Morgan*, 679 So. 2d 623, 625 (Miss. 1996) (citing *Cooper v. State Farm Fire & Cas. Co.*, 568 So. 2d 687, 692 (Miss.1990); *Brown v. Arlen Management Corp.*, 663 F.2d 575, 580 (5th Cir. 1981)). In the absence of a "'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors,'" the judgment of the court's imposition of sanctions will be affirmed. *Id.* Likewise, a trial court's decision to award attorney's fees pursuant to the Litigation Accountability Act is subject to the abuse of discretion standard of review. *Terex Corp. v. Ingalls Shipbuilding, Inc.*, 671 So. 2d 1316, 1324 (Miss. 1996). *See also Bank of Mississippi v. Southern Mem'l Park, Inc.*, 677 So. 2d 186, 191 (Miss. 1996) (citing *Barber v. Barber*, 234 Miss. 89, 105 So. 2d 630 (1958)).

## DISCUSSION

### I. WHETHER THE CIRCUIT COURT ERRED IN AWARDING SANCTIONS AGAINST AUSSENBERG.

¶18. On February 20, 1996, Wittjen filed a motion to compel discovery to interrogatories and requests for production. On October 18, 1996, the circuit court ordered QPI, through Wyssbrod, to report all business transactions of QPI to Wittjen on fourteen-day intervals. Wyssbrod failed to provide a current set of corporate records as ordered by the court, and the circuit judge, by order dated January 16, 1997, found Wyssbrod in willful contempt of court and entered sanctions against him in the amount of $1,000. The order stated that the sanctions were to be paid from Wyssbrod's personal funds rather than the funds of QPI.

¶19. On behalf of Wyssbrod, Aussenberg filed a motion for relief from the order granting sanctions against Wyssbrod. To the motion, Aussenberg attached a letter written by him to the circuit court contesting the sanctions. The court ordered "all parties and counsel" to appear at a status conference on January 30, 1997, for the purpose of addressing the issues raised in Aussenberg's letter. Aussenberg failed to attend the status conference, despite the order of the court. He notified Craig by telephone that he had filed QPI's bankruptcy petition the morning of the status conference and that to attend the status conference would be a violation of the automatic stay. Aussenberg also notified the court of the bankruptcy filing and stated that he would not attend the status conference. The circuit court administrator informed Aussenberg by telephone the morning of the hearing that the circuit judge intended for him to attend the hearing despite the filing of the bankruptcy petition.

¶20. The status conference was held, despite the absence of Aussenberg. At the conference, the circuit judge stated that the filing of the bankruptcy petition would not stay proceedings unrelated to the debt. The court found Aussenberg in contempt of court for failure to appear at the hearing. The court rescinded the $1,000 sanction initially placed upon Wyssbrod, and entered a sanction of $1,000 against Aussenberg.

¶21. Aussenberg argues that there is insufficient evidence in the record to justify the circuit court's imposition of the $1,000 sanction against him because Wyssbrod's failure to comply with the court's discovery orders was not due to any culpability on his part. Aussenberg's argument centers around the following statements by the circuit judge at the status conference:

> [L]et me state for the record that it is clear to this Court that Mr. Aussenberg and Mr. Aussenberg alone has counseled and advised his client throughout this entire matter to do everything he could to avoid the orders of the Court, to avoid complying with discovery even after being directed to do so while having motion to compel discovery hearings.... But Mr. Aussenberg has always tried to find a way to go around what the Court has ordered to try to keep one foot in the boundaries of legality and the ethics required of him but yet evade and avoid everything the Court has ordered to do. He filed this action, but then he has done everything he can to keep this from coming to a conclusion and having the Court decide anything.... I believe that Mr. Aussenberg's contempt is direct, direct and continuing to this Court....

¶22. Aussenberg maintains that there is no evidence in the record which suggests that he had any part in counseling his client to disobey the court's discovery orders. Aussenberg points to Wyssbrod's testimony at a January 19, 1999, hearing in which Wyssbrod stated that Aussenberg never advised him not to deliver any records. In his contention that there is no evidence in the record indicating that he counseled his client to

disobey discovery orders, Aussenberg is correct. Nevertheless, Aussenberg overlooks the grounds on which the circuit court ultimately sanctioned him. Regardless of the language of the circuit judge regarding Aussenberg's part in Wyssbrod's disregard of the court's discovery order, the order of the circuit court entered pursuant to the status conference clearly states:

> The hearing was scheduled to address issues raised by Martin Aussenberg in his letter addressed to the Court dated January 24, 1997. Previous to the hearing, the Court was advised by Martin Aussenberg that a bankruptcy petition had been filed in the Bankruptcy Court of the Western District of Tennessee on behalf of Quality Pallets, Inc. Even though the Court, through the Court Administrator, advised Martin Aussenberg to attend the hearing, he chose not to do so under the guise of the bankruptcy filing. **This Court does not believe that Martin Aussenberg had a valid reason for failing to appear at the hearing of this cause, and, therefore, finds him in direct contempt of this Court for his failure to appear**.

(emphasis added). Based upon this finding, the court rescinded the $1,000 sanction placed upon Wyssbrod and placed it upon Aussenberg.

¶23. The imposition of punishment for contempt of court is within the discretion of the trial court. *Gebetsberger v. East*, 627 So. 2d 823, 826 (Miss. 1993)). Mississippi law clearly supports a court's power to sanction an attorney or party for violation of court orders, and, more specifically, for failure to appear as ordered by the court. *See Alviers v. City of Bay St. Louis*, 576 So. 2d 1256 (Miss. 1991); *Wolf v. State*, 260 So. 2d 425, 433 (Miss. 1972). *See also* Miss. Code Ann. § 9-1-17 (Supp. 2000); U.R.C.C.C. 1.03 & 3.02. Nothing in the record suggests that the circuit court released Aussenberg from his obligation to appear in the circuit court the afternoon of the status conference. In fact, the court administrator informed Aussenberg that the judge expected him at the status hearing, despite the bankruptcy filing that morning.

¶24. Aussenberg argues that the circuit court erred by proceeding with the status conference. Aussenberg contends that the automatic stay in effect upon the filing of the bankruptcy petition precluded the circuit court from proceeding with the conference and, apparently, from entering sanctions against Aussenberg. *See* 11 U.S.C.A. § 362(a) (filing of bankruptcy petition operates as stay against enforcement of judgment or proceedings against debtor or against estate property). Interestingly, Aussenberg apparently wished the circuit court to acknowledge the automatic stay in regard to the status conference, but to disregard it in regard to the motion to dismiss filed on the same day by QPI. *See Pope v. Manville Forest Prods. Corp.*, 778 F.2d 238, 239 (5th Cir. 1985) (automatic stay precludes the court from dismissing the proceeding).

¶25. We conclude that Aussenberg's view of the automatic stay is overly expansive. The purpose of the automatic stay is to prevent a race to the courthouse to obtain the debtor's assets, and the scope of the stay should be construed no more broadly than necessary to effectuate the purpose of the stay. *In re Continental Air Lines, Inc.*, 61 B.R. 758 (S.D.Tex. 1986). Though the circuit court stayed all progression in this case subsequent to the hearing at issue, the automatic stay imposed by § 362 did not necessarily preclude the court from holding the hearing regarding Wyssbrod's discovery violations.

¶26. The automatic stay does not stay the entire proceeding where the debtor is one of several defendants. *Neubauer v. Owens-Corning Fiberglas Corp.*, 26 B.R. 644 (E.D. Wis. 1983). The stay generally does not protect persons other than the debtor, such as principals and officers, and does not protect non-

bankruptcy co-defendants of the debtor. *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324 (10th Cir. 1984) (does not protect codefendants); *Lynch v. Johns-Manville Sales Corp.,* 710 F.2d 1194, 1196-97 (6th Cir.1983) (same); *In re Philadelphia Gold Corp.*, 56 B.R. 87 (Bankr. E.D. Pa. 1985) (does not protect principals); *In re Nashville Album Productions, Inc.*, 33 B.R. 123 (M.D. Tenn. 1983) (does not protect officers). The hearing at issue was held to determine the propriety of sanctions against Wyssbrod, not the debtor in bankruptcy, QPI. The court's order specifically stated that the discovery sanctions were to be paid from Wyssbrod's personal funds, not those of the corporation. Furthermore, the sanctions for contempt at issue here were imposed against Aussenberg, not Wyssbrod nor QPI.

¶27. Actions stayed do not include contempt proceedings arising out of disobedience to a state court order made prior to the stay. *In re Dumas*, 19 B.R. 676, 677 (B.A.P. 9th Cir. 1982). An act committed in disregard of a court order is a contempt of that court and is within the inherent power of the court to punish. *Purvis v. Purvis*, 657 So. 2d 794, 798 (Miss. 1995) (citing *Melvin v. State*, 210 Miss. 132, 148, 48 So. 2d 856 (1950)). Aussenberg knowingly disregarded a court order. He had notice of the hearing before the circuit court and was, in fact, informed by the court administrator the morning of the hearing that the court expected his presence regardless of the bankruptcy petition. He also had notice, prior to the hearing, that the court would not recognize as valid his explanation for not attending the hearing.

¶28. Aussenberg also contends that he was not given notice as to the possibility of sanctions being assessed against him. Aussenberg argues that by summarily sanctioning him for contempt, the circuit judge violated [Canon3(A)(4) of the Code of Judicial Conduct](), which provides that "[a] judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law . . . ."

¶29. This Court has held that where the contemptuous act is direct -- that is, where it occurs within the presence of the court -- the court is empowered to punish the actor summarily, but where the act is constructive -- that is, the act occurred outside the presence of the court -- the court must give the contemnor the procedural protections of notice and a fair hearing. *Lawson v. State*, 573 So. 2d 684, 686 (Miss. 1990); *Varvaris v. State*, 512 So. 2d 886, 887 (Miss.1987); *Jordan v. State*, 216 Miss. 542, 62 So. 2d 886 (1953).

¶30. Courts are divided as to whether an attorney's absence is best characterized as contempt in the presence of the court, otherwise known as direct contempt. *United States v. Nunez*, 801 F.2d 1260, 1264 (11th Cir. 1986). *See also* John E. Theuman, Annotation, *Attorney's Failure to Attend Court, or Tardiness, as Contempt*, 13 A.L.R. 4th 122 (1982). This Court has held that a party's failure to appear in court at the appointed time constitutes constructive contempt. *Murrell v. State*, 655 So. 2d 881, 887 (Miss. 1995); *Wolf v. State*, 260 So. 2d 425, 433 (Miss. 1972). Likewise, the Fifth Circuit has held that the failure of a lawyer to appear for a trial is not a contempt committed in the presence of the court. *Smith v. Smith*, 145 F.3d 335, 342 (5th Cir. 1998) (citing *Nunez*, 801 F.2d at 1264). The Ninth Circuit has held that ordinarily an attorney's absence is contempt outside the presence of the court because "the contempt consists not in the absence from the courtroom but in the reasons for the attorney's presence elsewhere, and the presence elsewhere was, of course, not in the actual presence of the Court." *In re Allis*, 531 F.2d 1391, 1392 (9th Cir. 1976). *See also Thyssen, Inc. v. S/S Chuen On*, 693 F.2d 1171, 1175 (5th Cir. 1982); *United States v. Delahanty*, 488 F.2d 396, 398 (6th Cir. 1973).

¶31. Nevertheless, in the circumstances as they exist in the case at hand, Aussenberg's failure to attend the

status conference was properly punished summarily. In **Smith**, the Fifth Circuit explained that in narrowly defined circumstances, an attorney's absence may be punished without the benefit of notice and a separate hearing. The Court stated, "In **Thyssen**, we noted that there may be a 'hypothetical exception' to the general rule that absence can be punished only through Rule 42(b) when the reason for the absence or tardiness is 'known to the court.'" **Id.** (citing **Thyssen**, 693 F.2d at 1175). "We explained that this could occur because '[c]ounsel may advise the court that he will not appear for a certain reason, or he may advise the court why he was absent.'" **Id.** (citing **Thyssen** at 1175; **United States v. Baldwin**, 770 F.2d 1550, 1555 (11th Cir. 1985) (upholding use of summary contempt procedures where the attorney, prior to his absence "told the court why he would not be present on April 17, and that he was refusing to obey a court order")).

¶32. Aussenberg telephoned the court the morning of the conference and advised the court that he would not attend the conference as ordered. The court administrator informed Aussenberg that the judge expected him to attend the conference and that Aussenberg's reason for not attending the conference would not be recognized as valid by the court. This is distinguishable from instances where an attorney merely fails to appear, which is generally held to be constructive contempt. **See Murrell,** 655 So. 2d at 891 (Pittman, J., dissenting). Procedural protections are provided in cases of constructive contempt because the actions constituting the contempt are not within the knowledge of the court. **Varvaris v. State**, 512 So. 2d at 887-88. Under the facts of this particular case, however, Aussenberg's actions and reasons for his actions were known to the court. The circuit court correctly characterized these actions as direct contempt. As Justice Pittman stated in **Murrell**, "[t]o hold otherwise would encroach upon the court's inherent authority to hold a person in contempt of court for violation of court orders." **Id.** Therefore, Aussenberg was not entitled to formal notice or a separate evidentiary hearing.

¶33. Aussenberg also contends that, should this Court find that the circuit court did not err in ordering sanctions, it should nevertheless find that the sanctions are excessive in light of Miss. Code Ann. § 9-1-17 (Supp. 2000), which states in pertinent part:

> The Supreme, circuit, chancery and county courts and the Court of Appeals shall have power to fine and imprison any person guilty of contempt of the court while sitting, but the fine shall not exceed One Hundred Dollars ($100.00) for each offense, nor shall the imprisonment continue longer than thirty (30) days....

This Court has held that the limits of § 9-1-17 apply only where the sanction is imposed for direct contempt and that the limits do not apply to constructive contempt. **Wood v. State**, 227 So. 2d at 290 (Miss. 1969) (citing **Melvin v. State**, 210 Miss. 132, 48 So. 2d 856 (1950)). Since Aussenberg's actions are best characterized as direct contempt, the sanctions imposed by the circuit court must be reduced to the $100 limitation found in § 9-1-17.

### II. WHETHER THE CIRCUIT COURT ERRED IN AWARDING ATTORNEY'S FEES AND EXPENSES PURSUANT TO THE LITIGATION ACCOUNTABILITY ACT AGAINST AUSSENBERG.

¶34. The Litigation Accountability Act of 1988, Miss. Code Ann. § § 11-55-1 et seq. (Supp. 2000), provides that a court shall award reasonable attorney's fees and costs against any party or attorney upon finding that "an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or

harassment . . . ." ***Id.*** § 11-55-5(1) The fees and costs may be assessed against the offending attorneys or parties, or both. ***Id.*** § 11-55-5(3). The Act defines "without substantial justification" as "frivolous, groundless in fact or in law, or vexatious, as determined by the court." ***Id.*** § 11-55-3(a). When reviewing a trial court's decision regarding the imposition of sanctions pursuant to the Litigation Accountability Act, this Court is limited by the abuse of discretion standard. ***Leaf River Forest Prods., Inc. v. Deakle***, 661 So. 2d 188, 197 (Miss. 1995).

¶35. In its order granting the motions for summary judgment filed by Wittjen and First State Bank, the circuit court found that the Third Amended Complaint and the complaints filed by Wyssbrod prior to the Third Amended Complaint were filed without substantial justification. The court concluded that Wittjen and First State Bank were entitled to recover their litigation expenses, including reasonable attorney's fees, pursuant to the Litigation Accountability Act. The circuit court then held a hearing to determine the amount of expenses and fees incurred by Wittjen and First State Bank and to determine whether Wyssbrod's attorneys should be personally liable for any of the fees and expenses.

¶36. In a detailed order entered February 23, 1999, the court examined each factor listed in § 11-55-7 to be considered by a court in determining an award under the Litigation Accountability Act. The court concluded that the Third Amended Complaint was filed without substantial justification. The court awarded First State Bank attorney's fees and expenses in the amount of $25,724.38, and awarded Wittjen attorney's fees and expenses in the amount of $47,870.64. The court held Wyssbrod and Aussenberg jointly and severally liable for these amounts.

¶37. Aussenberg first contends that the circuit court abused its discretion in concluding that the action was frivolous. Specifically, Aussenberg argues that the trial court erred in determining that the first factor set forth in § 11-55-7 was satisfied. Section 11-55-7 provides:

> In determining the amount of an award of costs or attorney's fees, the court shall exercise its sound discretion. When granting an award of costs and attorney's fees, the court shall specifically set forth the reasons for such award and shall consider the following factors, among others, in determining whether to assess attorney's fees and costs and the amount to be assessed:
>
> (a) The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed;
>
> (b) The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid;
>
> (c) The availability of facts to assist in determining the validity of an action, claim or defense;
>
> (d) Whether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose;
>
> (e) Whether or not issues of fact, determinative of the validity of a party's claim or defense, we reasonably in conflict;
>
> (f) The extent to which the party prevailed with respect to the amount and number of claims or defenses in controversy;

(g) The extent to which any action, claim or defense was asserted by any attorney or party in a good faith attempt to establish a new theory of law in the state, which purpose was made known to the court at the time of filing;

(h) The amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court;

(i) The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action;

(j) The extent of any effort made after the commencement of an action to reduce the number of parties in the action; and

(k) The period of time available to the attorney for the party asserting any defense before such defense was interposed.

Miss. Code Ann. § 11-55-7 (Supp. 2000).

¶38. The circuit court's order details the court's findings on each factor. Regarding the first factor ("the extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed"), the circuit court stated:

The court finds that the record is absent any evidence that either Wyssbrod or Aussenberg exercised sufficient effort to determine the validity of the claims before they were asserted. The event that triggered the beginning of the statute of limitations time period was the letter of May 5, 1995 whereby Wittjen withdrew his agreement to cover the overdrafts. The lawsuit was filed on June 19, 1995. There was no time constraint that prevented Wyssbrod and Aussenberg from fully investigating the validity of the claim. There was absolutely no emergency situation existed at the time of filing suit. The lack of an emergency need for filing the lawsuit was further evident by the failure of the claimant to post the bond necessary to implement the TRO he had requested. The TRO was sought to prevent First State Bank from bouncing checks. The irreparable harm was alleged to be the loss of suppliers of materials that QPI needed to build pallets. On the one hand, QPI had sufficient funds to buy materials without writing bad checks on the First State Bank account and on the other hand, the evidence in this case failed to produce any instant in which QPI was unable to buy materials just as it had been able to do prior to May 5, 1995.

¶39. Aussenberg contends that he exercised reasonable skill and care in investigating the facts and circumstances of the claims of QPI prior to filing the action. Aussenberg states that he reviewed the pre-incorporation agreement entered into between Wittjen and Wyssbrod, the corporation's charter, minutes of board meetings, and bank records. From these documents Aussenberg maintains that he determined that Wittjen had breached the incorporation agreement and that such had negatively affected QPI's operations. This argument is specious. Regarding Wittjen's obligations under the pre-incorporation agreement, the agreement provides only that Wittjen would "provide working capital of $6,000 cash, $60,0000 accounts receivable, **and additional monies at his discretion**, necessary to get the business started until it has its own working capital to run or can borrow money on its own . . . ." Without question, Wittjen provided the cash and accounts receivable, and such is undisputed by Wyssbrod. There is absolutely no provision in the

pre-incorporation agreement or in any other documents contained in the record and reviewed by Aussenberg obligating Wittjen to fund overdrafts on the First State Bank account. Even assuming an oral agreement to do so, the pre-incorporation agreement provides that Wittjen was to supply additional funds "at his discretion." Wyssbrod himself testified by deposition that the written agreement contains all terms and conditions of the agreement between Wyssbrod and Wittjen and that Wittjen negotiated for the "at his discretion" language because he did not want the obligation to be open ended. As the circuit court concluded, there was simply no question of fact existing at the time summary judgment was granted or at the time the third complaint was filed on June 10, 1996, more than one year after the action was initiated, that Wittjen's decision to cease funding the overdrafts constituted a breach of contract or of fiduciary duty.

¶40. Wyssbrod maintained that Wittjen was obligated, by the pre-incorporation agreement, to provide working capital by funding overdrafts as long as the company needed capital infusion. It is evident, however, from Wyssbrod's deposition testimony and the very bank statements Aussenberg claims he examined prior to filing the complaint that at the time Wittjen stopped funding the overdrafts, there were sufficient funds in QPI's account at the Bank of Mississippi to fund the overdrafts and to keep the corporation up and running. All relevant facts were readily available to Aussenberg prior to the filing of the lawsuit.

¶41. Aussenberg unconvincingly argues that the facts developed during discovery bore out many of the allegations of the complaint. The foremost indication of the lack of foundation to any of Wyssbrod's or QPI's claims rests in the deposition of Wyssbrod, taken one month after the third complaint was filed. From the deposition testimony, it is clear that Aussenberg had no idea at the time of the deposition, and even less at the time the complaint was filed, the damages allegedly suffered by his client by Wittjen's refusal to fund the overdrafts. For instance, the following exchange occurred between defense counsel and Wyssbrod:

> Q. What I want you to tell me is what it is that Bill Wyssbrod who filed the lawsuit against Jack Wittjen expects to recover from Jack Wittjen.
>
> A. Personal losses, company losses.
>
> Q. Tell me what those are.
>
> A. Monetary losses due to loss of business.
>
> Q. Be specific about what those monetary losses are.
>
> A. Well, when you lose business, you lose money, and that's about as specific as I can get.

Wyssbrod stated that he lost no employees or customers as a result of Wittjen's alleged interference. The supplier Aussenberg claims he interviewed prior to filing the complaint, Golden Timber, did not stop supplying QPI because of the bounced checks. Rather, as shown through the supplier's deposition, Golden Timber stopped supplying QPI when QPI failed to comply with the C.O.D. requirements of that company - requirements imposed on all businesses to which Golden Timber supplies products.

¶42. Aussenberg also maintains that Leigh Ann Rutherford, the first Mississippi attorney associated by Aussenberg in this action, failed to advise him that QPI did not have a viable cause of action. Appearing pro hac vice does not relieve Aussenberg of the responsibility to conduct reasonable investigation into the facts and law supporting actions filed by him in the courts of this state. This Court concludes that this is a rather

lame attempt to "pass the buck."

¶43. Also telling of Aussenberg's lack of preparation is the fact that he filed a complaint on behalf of company which was later determined not to be a legal entity, hence the amendment made to the second complaint, as well as the fact that he arrived at Wyssbrod's deposition without having read the third amended complaint and being unaware that he was representing Wyssbrod individually.

¶44. Furthermore, Aussenberg challenges only the circuit court's findings regarding § 11-55-7(a) and does not contest the trial court's findings on any of the other factors. The court found against Aussenberg and his client on each and every factor listed in § 11-55-7, save that of (k), which the court determined was not applicable in this case. The circuit judge did all that he was required to do and found that Aussenberg was in violation of the Litigation Accountability Act. Based on this record, this Court cannot say that the circuit judge abused his discretion. This assignment of error is meritless.

¶45. Aussenberg's second attack on the circuit court's award of attorney's fees and expenses rests on the fact that he was not representing Wyssbrod or QPI at the time the expenses and fees were awarded. On January 30, 1997, the day of the status hearing discussed in issue one, Aussenberg informed the court that given the bankruptcy filing, QPI had chosen other counsel and no longer required Aussenberg's services. Aussenberg stated in the facsimile to the court, "Consequently, I consider that I have been discharged as counsel in the above matter." At the hearing, the circuit judge stated, "I would certainly leap upon this opportunity that Mr. Aussenberg has given me, and Mr. Aussenberg's admission is terminated, voluntarily I might add, because he has informed this Court that he is no longer employed by Quality Pallets. Therefore, he will no longer be representing Quality Pallets and Mr. Wyssbrod in this court." In the order entered pursuant to the status conference, the circuit court rescinded Aussenberg's authority to practice law in the court pro hac vice and dismissed him from further responsibility to the plaintiffs.

¶46. Aussenberg asserts that the circuit court lacked personal jurisdiction over him for purposes of the award of attorney's fees and expenses since he was neither a party to the action nor counsel of record. Aussenberg contends that in order for the circuit court to properly enter a judgment against him for fees and expenses, it was essential that he receive service of process.

¶47. Wittjen argues that Aussenberg submitted to the jurisdiction of the court by appearing as counsel on behalf of the plaintiffs. Wittjen cites M.R.A.P. 46 (b)(2), which states:

> A foreign attorney appearing as counsel pro hac vice before the Supreme Court or the Court of Appeals or any court or administrative agency of this state shall be subject to the jurisdiction of the courts of this state in any matter arising out of the attorney's conduct in such proceedings. The attorney shall study and comply with the standards of professional conduct required of members of the Mississippi Bar and shall be subject to the disciplinary jurisdiction of the courts of this state, of the disciplinary tribunals of the Mississippi Bar, and of the Mississippi Board of Bar Admissions with respect to any acts occurring during the course of such appearance.

Furthermore, M.R.A.P. 46(d) provides as follows:

> Every petition motion, brief, or other paper filed by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. The appellate court may, after reasonable notice and an opportunity to show cause to the contrary, and

after hearing, if requested by the attorney, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar, or for failure to comply with these rules or any order of the Supreme Court or the Court of Appeals, or for filing any frivolous petition, brief, or other paper.

¶48. At the hearing regarding attorney's fees and sanctions, the circuit judge stated that he directed that Aussenberg be given notice of the hearing "because he could be potentially hit with a great deal of responsibility here." Wittjen's counsel responded that he had sent Aussenberg a copy of the order granting summary judgment and the order setting the hearing by both regular mail and certified mail. Wittjen's counsel had with him the signed return receipt, and Wittjen's counsel stated that he had sent a copy of the receipt via facsimile to Aussenberg's office. Aussenberg made no reply.

¶49. Clearly, Aussenberg had actual notice of the order granting summary judgment and the evidentiary hearing regarding the attorney's fees and expenses. He chose not to respond. The rules regarding disciplinary action against attorneys practicing before the court clearly contemplate that no formal service of process is necessary, but rather that by appearing before the court in a matter, attorneys submit themselves to the jurisdiction of the court for disciplinary purposes under the rules of court for matters arising out of their representation.

¶50. The cases relied upon by Aussenberg, *Rice v. McMullen*, 207 Miss. 706, 43 So. 2d 195 (1949), and *Burns v. Burns*, 133 Miss. 485, 97 So. 814 (1923), both involved original actions against non-resident defendants. The claim for recovery of attorney fees asserted by Wittjen is not an original action, but arises out of the actions of Aussenberg committed during the time he was an attorney in this case. As Wittjen asserts, Aussenberg received notice of Wittjen's claim, by mail, the same as he would have received had he remained an attorney in the case. We find this assignment of error is without merit.

### III. WHETHER THE CIRCUIT COURT ERRED IN ENTERING JUDGMENTS AGAINST AUSSENBERG AND CRAIG FOR CORPORATE FUNDS PAID TO THEM AS ATTORNEY'S FEES.

¶51. In his motion for summary judgment, Wittjen argued that Wyssbrod had expended corporate funds for the prosecution of the action without corporate authority. Wittjen argued that he was thus entitled to a judgment against Wyssbrod for all corporate funds expended as attorney's fees. Wittjen also argued that he was entitled to recover all corporate funds paid to Wyssbrod's attorneys from the attorneys themselves.

¶52. In its order granting summary judgment in favor of Wittjen and First State Bank, the circuit court found that Wyssbrod had no authority to expend corporate funds to prosecute this action either for the benefit of QPI or for himself individually. The court concluded that Wittjen was entitled to a judgment against Wyssbrod in an amount equal to the corporate funds expended to pay the plaintiffs' attorneys. Subsequent to the evidentiary hearing on attorney's fees and expenses, the court held that Wittjen was entitled to judgment against Wyssbrod in the amount of $43,212.75, the amount of corporate funds expended by Wyssbrod to pay the plaintiffs' attorneys prior to the filing of the bankruptcy petition. The court also entered judgment against Aussenberg in the amount of $27,662.42, against Craig in the amount of $14,550.30, and against Beck in the amount of $1,000. These amounts represent the portion of corporate funds received by Wyssbrod's attorneys for their services. The court held Wyssbrod and his attorneys jointly and severally liable to Wittjen for the corporate funds that each attorney received.[1]

¶53. Aussenberg and Craig argue that the circuit court erred in ordering them to repay corporate funds received by them for their services. They do not dispute that they were paid by QPI with corporate funds, nor do they dispute the amounts received for their services in this case.

¶54. Aussenberg first asserts that Wyssbrod's expenditure of corporate funds on behalf of the corporation was a lawful action within Wyssbrod's powers as an officer and director of QPI. This argument is specious. Aussenberg cites the general rule that directors, as the governing body of the corporation, in the absence of some express restriction in the corporate by-laws, have the power to hire and employ legal counsel on behalf of the corporation. Aussenberg correctly states that the corporate by-laws of QPI provide no express restriction on the employment of legal counsel. However, Miss. Code Ann. § 79-4-8.21(a)(1996) provides:

> [u]nless the articles of incorporation or bylaws provide otherwise, an action required or permitted by §§ 79-4-1.01 et seq. to be taken at a board of directors' meeting may be taken without a meeting if the action is taken by all members of the board. The action must be evidenced by one or more written consents describing the action taken, signed by each director, and including in the minutes or filed with the corporate records reflecting the action taken.

The board of directors of QPI consisted of two persons - Wyssbrod and Neal Labovitz. The record contains absolutely no documentation of a determination or resolution that this action be filed on behalf of QPI, be it in the form of minutes from a directors' meeting or written consents signed by Wyssbrod and Labovitz.

¶55. Wittjen argues that while the Mississippi Business Corporation Act provides authority for a shareholder to bring suit against other shareholders in the name of the corporation, there is no authority whereby the suit can be prosecuted at the cost of the corporation unless the action is successful. Miss. Code Ann. § 79-4-7.46 (1996) provides:

> On termination of the derivative proceeding the court may:
>
> (1) Order the corporation to pay the plaintiff's reasonable expenses (including attorney fees) incurred in the proceeding if it finds that the proceeding has resulted in a substantial benefit to the corporation; or
>
> (2) Order the plaintiff to pay any defendant's reasonable expenses (including attorney fees) incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose.

The action brought on behalf of QPI was far from successful -- as discussed above, the circuit court found it to be frivolous. Furthermore, Wyssbrod certainly had no authority to expend corporate funds to prosecute claims filed in his individual capacity.

¶56. Aussenberg's second argument is the same as that asserted by Craig. Craig and Aussenberg argue that because there is no statutory basis for the circuit court's judgment against them for the corporate funds received as attorney's fees, the circuit court lacked the jurisdiction necessary to enter judgments against them as they were not made parties to the action. We agree. The circuit court exceeded its authority in ordering Aussenberg and Craig to disgorge the funds received by them as attorney's fees.

¶57. Our rules of procedure and statutory code contain specific provisions which allow courts to require attorneys appearing before them to pay money either to the court or to another party. These provisions contemplate courts requiring attorneys to pay the fees and expenses of another party to the action or sanctions for improper conduct in an action. *See* M.R.C.P. 11 (sanctions and award of expenses for pleadings or motions which are frivolous, false, etc.); M.R.C.P. 37 (sanctions and award of expenses for discovery violations); M.R.A.P 2 (sanctions for non-compliance with rules); Miss. Code Ann. §§ 11-55-1 et seq. (Supp. 2000)(fees and costs for filing meritless action); Miss. Code Ann. § 9-1-17 (Supp. 2000) (sanctions for contempt). Clearly, as discussed above regarding the fees and expenses awarded to Wittjen and First State Bank, the circuit court has jurisdiction over attorneys appearing before it to impose such sanctions. However, the circuit court's judgment of disgorgement against Aussenberg and Craig fits into none of these special provisions.

¶58. This Court has stated that where there is no specific authority for imposing sanctions, courts have an inherent power to protect the integrity of their processes, and may impose sanctions in order to do so. ***Ladner v. Ladner***, 436 So. 2d 1366, 1370 (Miss. 1983). In this case, however, the circuit court did not impose the judgment of disgorgement against Aussenberg and Craig as a sanction. The court merely found that Aussenberg and Craig were obligated to repay the funds to Wittjen. There was not a finding that Aussenberg and Craig knew or should have known the funds were those of the corporation. The order of disgorgement in this case was in the nature of a judgment against persons not party to the action. Undeniably, Wittjen (as assignee of the corporation's claims) may have a cause of action against Aussenberg and Craig for corporate funds which may have been misapplied. This Court concludes that Wittjen must bring an action against Aussenberg and Craig or that Wittjen should have sought to include Aussenberg and Craig as parties to the instant action. Rather, he has attempted to "back door" the judgment under the guise of our rules regarding attorney sanctions. It bears repeating that the circuit court did not order disgorgement of the fees as a sanction. Our rules simply do not allow such a judgment.

¶59. Wittjen argues that the judgment of the circuit court against Aussenberg and Craig is supported by the single statutory provision dealing with attorney's fees in derivative proceedings quoted above, Miss. Code Ann. § 79-4-7.46 (1996). Wittjen argues that if Aussenberg and Craig are allowed to keep the funds received as attorney's fees and Wyssbrod is required to repay the funds, Wittjen is denied the benefit of the above statute. There is no merit in this argument. The circuit court held Wyssbrod jointly and severally liable for the corporate funds unlawfully expended. Wyssbrod has not challenged this finding, and regardless of this Court's disposition of this issue regarding Aussenberg and Craig, Wyssbrod remains liable to Wittjen for the funds. Attorneys are not guarantors of the solvency of their clients for judgments entered against their clients. This statute does not in any way support the circuit court's judgment against Aussenberg and Craig. We conclude that the trial judge was without authority to enter a judgment against Craig and Aussenberg for the funds received by them as attorney's fees.

## CONCLUSION

¶60. This Court affirms the circuit court's imposition of sanctions against Aussenberg for his failure to appear at the status conference. However, the amount of sanctions is reduced from $1,000 to $100 pursuant to Miss. Code Ann. § 9-1-17 (Supp. 2000). The circuit court's award of attorney's fees and expenses pursuant to the Litigation Accountability Act is affirmed. The judgment against Aussenberg and Craig for the disgorgement of corporate funds received by them as attorney's fees is reversed and rendered.

¶61. **AS TO NO. 1999-CA-00549-SCT: AFFIRMED.**

**AS TO NO. 1999-CA-00777-SCT: AFFIRMED AS MODIFIED.**

**AS TO NO. 1999-CA-01461-SCT: REVERSED AND RENDERED.**

> **BANKS, P.J., WALLER AND DIAZ, JJ., CONCUR. McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J. MILLS, COBB AND EASLEY, JJ., NOT PARTICIPATING.**

> **McRAE, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

> **I. THE CIRCUIT COURT ERRED BY ALLOWING SANCTIONS AGAINST AUSSENBERG.**

¶62. On the morning of the status conference held by Judge Ready on January 30, 1997, attorney Aussenberg contacted the court administrator, informing him that a bankruptcy petition had been filed on behalf of QPI in the Western District of Tennessee. Due to the filing of that petition in bankruptcy, Aussenberg correctly assumed that it would be a violation of the automatic stay for him to attend the status conference, and therefore, he was absent from the conference. Aussenberg also contacted his co-counsel that morning, Omar Craig, who was local counsel for QPI, and informed him that he would not be attending the status conference. The lower court erred by sanctioning Aussenberg for his absence.

¶63. The conference was to discuss the contents of a letter Aussenberg had written to the lower court, concerning sanctions Wyssbrod was ordered to pay on behalf of QPI. With no notice or hearing, the trial judge transferred the sanction previously held against QPI and Wyssbrod, to their out-of-state attorney, Aussenberg. The trial judge abused his discretion by transferring the sanctions from Wyssbrod to Aussenberg without affording Aussenberg proper notice and an opportunity for a show cause hearing to answer these contempt charges.

¶64. From the record, it appears that Aussenberg acted in good faith by contacting his co-counsel and the court administrator about the filing of the bankruptcy petition and his intentions not to violate the automatic stay. The trial judge stated at the status conference that all other matters in this case would be postponed until a determination by the bankruptcy court. The status hearing should also have been put on hold pending the outcome of the bankruptcy case. *See Cherry v. Dock C-Food Ltd.*, 78 B.R. 65, 70 (E.D. Pa. 1987) (holding the automatic stay applies to all civil contempt proceedings not included in the exemptions to the automatic stay listed in §362(b); no exception exists for civil contempt proceedings); *see also In re Wiese*, 1 S.W.3d 246, 249 (Tex. Ct. App. 1999) (holding "All actions with respect to civil contempt orders are stayed until such time as the automatic stay has been lifted by the bankruptcy court."). In addition, if the lower court intended to sanction Aussenberg, the trial judge should have followed proper procedure and afforded Aussenberg a show cause hearing to determine these issues.

¶65. In *Atkins v. Martinez*, 176 B.R. 998, 1006 (D. Minn. 1994), the defendants, who were attorneys, obtained a bench warrant to compel the debtor's attendance before a judge in a state court concerning a motion to compel discovery. The *Atkins* court stated that the automatic stay is a creature of statute, and as such, the scope of the stay is governed by its language, specifically in §362. Since an exception for civil contempt proceedings is not included in the language of §362(b), this court decided it should not create an

exception that exists beyond the statutory language. Quoting the statutory language of §362(a), the court noted that the automatic stay section "clearly encompasses" all forms of civil litigation, including any claims or causes of action that were founded on facts that arose pre-petition. *Id.* The court stated, "Every proceeding of a judicial or quasi-judicial nature is affected." *Id.* (quoting *In re Joe Delisi Fruit Co.*, 11 B.R. 694, 695 (Bankr. D. Minn. 1981)). Therefore, the automatic stay prevents the initiation by "all persons and entities" against a debtor in bankruptcy. *Id.* The facts of *Phoenix Exploration, Inc. v. Murexco Petroleum, Inc.*, 614 So. 2d 72, 72 (La. 1993), are similar to the present facts, where a realtor had filed bankruptcy proceedings at the time of a contempt hearing. His attorney informed him that it was not necessary for him to appear at the hearing because the automatic stay was in effect, and the trial judge found the realtor in contempt. The court set aside the trial judge's ruling, and remanded the case for further proceedings.

¶66. At the status conference, the trial judge stated that the automatic stay would not stay matters that are unrelated to the debt. In addition, the majority agrees that the automatic stay did not stay this status conference, as they state, "Aussenberg wished the circuit court to acknowledge the automatic stay in regard to the status conference, but to disregard it in regard to the motion to dismiss filed on the same day by QPI." Section 362(a)(1) of the Bankruptcy Code states the automatic stay operates as to "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." (emphasis added). Therefore, the stay protects all actions "against the debtor," and not actions on behalf of the debtor. In addition, the motion to dismiss would have no bearing on the case against QPI due to the automatic stay, and therefore, the case itself and the status conference was and should have been stayed after the petition in bankruptcy was filed.

¶67. The majority is incorrect in attributing the sanction to Wyssbrod instead of to QPI. The original scheduling order concerning this discovery stated, "Quality Pallets, Inc., through Bill Wyssbrod, will report all business transactions of the corporation to counsel for the Defendant, Jackson H. Wittjen, on fourteen (14) day intervals."[(2)] The status conference was to discuss sanctions against Wyssbrod for not producing discovery on behalf of QPI. Since QPI was the debtor in bankruptcy, this meeting was stayed pursuant to the automatic stay. Although the trial judge may have been frustrated with Aussenberg, he abused his discretion by allowing the conference to proceed in violation of the automatic stay. The trial judge also dismissed Aussenberg from the representation of QPI on the day of the status conference on January 30, 1997, and by order of the court on February 18, 1997. The trial judge cannot dismiss Aussenberg from representing QPI and sanction him for not attending a status conference on the same day without allowing him the opportunity for a show cause hearing to contest the sanction.

¶68. The circuit court erred in awarding sanctions against Aussenberg for not attending the proceedings.

### II. THE CIRCUIT COURT ERRED IN AWARDING ATTORNEY'S FEES AND EXPENSES PURSUANT TO THE LITIGATION ACCOUNTABILITY ACT AGAINST AUSSENBERG.

¶69. The majority asserts that the lower court was correct in awarding attorney's fees against Aussenberg based on the filing of the Third Amended Complaint, stating that these fees are justified because the complaint is without substantial justification and that the sanctions should be assessed against Aussenberg

pursuant to the Litigation Accountability Act, Miss. Code Ann. § 11-55-7. Miss. Code Ann. § 11-55-3(a) (Supp. 2000), defines "without substantial justification" as being "frivolous, groundless in fact or in law." To determine whether a cause of action is frivolous pursuant to the statute, this Court must look to the definition of frivolous as found in the Mississippi Rules of Civil Procedure, Rule 11. M.R.C.P. 11 states when an attorney signs a pleading or a motion, this "constitutes a certificate by him that he has read the pleading or motion; that to the best of his knowledge, information, and belief there is good ground to support it, and that it is not interposed for delay." (M.R.C.P. 11, West 2000). For purposes of Rule 11, a claim is frivolous only when the pleader or movant has no hope of success for his claim. *Scruggs v. Saterfiel*, 693 So. 2d 924, 927 (Miss. 1997) (citing *Stevens v. Lake*, 615 So. 2d 1177, 1184 (Miss. 1993) (quoting *Tricon Metals & Servs., Inc. v. Topp*, 537 So. 2d 1331, 1335 (Miss. 1989); *Smith v. Malouf*, 597 So. 2d 1299, 1303 (Miss. 1992) (applying Rule 11 definition to Litigation Accountability Act context)). A case may be weak or "light-headed", but that does not necessarily make it frivolous. *Scruggs*, 693 So. 2d at 927 (citing *Leaf River Forest Prods., Inc. v. Deakle*, 661 So. 2d 188, 195 (Miss. 1995); *Nichols v. Munn*, 565 So. 2d 1132, 1137 (Miss. 1990)).

¶70. In this case, the lower court in its Order, dated January 5, 1999, found that the cause of action stated in the Third Amended Complaint was filed "without substantial justification," and ordered attorney's fees on behalf of Wittjen assessed against Wyssbrod and Aussenberg, jointly and severally. In it subsequent Order dated February 23, 1999, the lower court determined the monetary amounts of litigation expenses, following an evidentiary hearing held on January 19, 1999. The February Order stated Wyssbrod and Aussenberg were jointly and severally liable to Wittjen for his attorney's fees.[3] The lower court also stated in this February Order, that the Third Amended Complaint filed by Wyssbrod on June 10, 1996, had been allowed per order of the court dated April 23, 1996, to allow the parties to correctly identify the plaintiffs.[4] It is also important to note that Aussenberg never signed this Third Amended Complaint, but it was signed by Wyssbrod's local counsel, Omar Craig. Craig was not sanctioned by the lower court to pay for any litigation expenses,[5] yet he was the attorney who signed the complaint in question, the Third Amended Complaint. It is not possible for the court to sanction Aussenberg, an attorney for Wyssbrod who was dismissed from this case by order of the lower court dated February 18, 1997, and not to sanction Wyssbrod's acting attorney in the action, Omar Craig, who actually signed the complaint in question.

¶71. Aussenberg did not file the Third Amended Complaint; and therefore, he cannot be liable for attorney's fees for Wittjen and First State Bank based on the "frivolousness" of this complaint. Aussenberg even stated in his deposition that he had not even seen the Third Amended Complaint, and he did not know the parties listed on that complaint. The July 8, 1999, judgment of the lower court, listing the amount of attorney's fees Wittjen is entitled to does not provide an itemization of these fees and does not indicate which fees were accrued at various dates in this trial, which began with the first complaint being filed on June 19, 1995. Although in the record, there is included a transcript of the January 19, 1999 evidentiary hearing to determine attorney's fees, and there is a list of several affidavits filed by attorneys included in the certified docket pages of the record, there is only one affidavit found in the record pertaining to relevant attorney's fees. This affidavit was filed by William P. Myers on July 8, 1999. There is also an affidavit filed by Martin Aussenberg and one filed by a paralegal, but these do not indicate an itemization of relevant attorney's fees. There are no affidavits in the record filed with this Court that itemize relevant attorney's fees. It appears that these affidavits may have been filed with the circuit court, and this is alluded to in the evidentiary hearing. However, this Court has no way of knowing which fees were assessed prior to the filing of this Third Amended Complaint. This lack of information in the record provides another basis that

Aussenberg should not be held liable for Wittjen's attorney's fees. There is no itemization of the fees, and therefore, no way of knowing which fees accrued when Aussenberg was still involved in the case. Since he did not file the Third Amended Complaint, and there are no affidavits or itemization of these fees, Aussenberg should not have to pay these attorney's fees. The circuit court erred by assessing these fees against Aussenberg.

¶72. In addition, the bankruptcy decree dated April 4, 1998, and signed by all the parties dismissed all claims against QPI. The bankruptcy dismissal dismissed all claims against QPI, and since Aussenberg was representing the debtor in bankruptcy, claims against him are also dismissed.

### III. THE CIRCUIT COURT ERRED IN ENTERING JUDGMENTS AGAINST AUSSENBERG AND CRAIG FOR CORPORATE FUNDS PAID TO THEM AS ATTORNEY'S FEES.

¶73. I concur with the majority that the circuit court erred and Wittjen is precluded from recovering these corporate funds from Aussenberg and Craig. I concur with the majority's reasoning as to this preclusion on the basis that Wittjen should have filed suit against Aussenberg and Craig on behalf of QPI or sought to have included them as parties to this action. However, Wittjen did not comply with the above actions. For these reasons as well as the provisions stated in the bankruptcy dismissal, I concur with the majority as to the above reasoning on this issue. The trial court did err by the judgments against Aussenberg and Craig.

¶74. The majority correctly states in its footnote one that, "technically the claim for corporate funds unlawfully expended would belong to QPI. However, all remaining claims of QPI were assigned to Wittjen by the bankruptcy court. " The majority fails to point out, when it cites to this bankruptcy dismissal document in the record, that Wittjen dismissed all his claims against QPI. Since Wittjen has dismissed his claims against QPI, he cannot now assert his claims for a return of the corporate funds paid to Aussenberg and Craig.

¶75. In addition, in its order dated July 7, 1998, the circuit court stated that upon review of the bankruptcy dismissal, only two claims remained in the case. One of these claims was the "counterclaim of Jackson Wittjen against Bill Wyssbrod to recover corporate funds expended by Bill Wyssbrod for his personal use." Wittjen did not specifically request attorney's fees in the counter complaint he filed to the Third Amended Complaint prior to the bankruptcy dismissal. This counter complaint is dated July 25, 1996, and there are no subsequent counter complaints filed by Wittjen in the record. Although Wittjen asked for the dissolution of QPI in this counter complaint, he did not specifically request reimbursement of corporate funds used to pay attorney's fees. Therefore, Wittjen is now barred from raising this claim.

¶76. In *Fulgham v. Snell*, 548 So. 2d 1320, 1322-23 (Miss. 1989), the appellant was found to have forfeited his claims because the claims were considered compulsory, and they had not been raised in the appellant's counterclaim. In deciding whether a case arose from the same transaction or occurrence on which a previous action was based, and therefore, whether the claim should have been pled in a counter complaint, the court used a combination of four factors, which are:

(1) Whether the same evidence or witnesses are relevant to both claims;

(2) Whether the issues of law and fact in the counterclaim are largely the same as those in the plaintiff's claim;

(3) Whether, if the counterclaim were asserted in a later lawsuit, it would be barred by res judicata;

(4) Whether or not both claims are based on a common nucleus of operative facts.

¶77. In this case, Wittjen's claims for attorney's fees should have been included in the counter complaint he filed. Since Wyssbrod was the only other remaining stockholder of QPI, it is not so unforeseeable that Wyssbrod would use corporate funds to pay for attorney's fees, especially since he filed suit in his individual name, but also in the name of the corporation, QPI. If Wittjen wanted to recover these fees, he should have requested them in his counter complaint. For the above reasons, I concur as to the issue of corporate funds and would reverse the ruling of the circuit court. As to the issues of contempt sanctions and sanctions for attorney's fees against Aussenberg, I dissent from the majority opinion. I would also reverse the circuit court on these two issues, finding Aussenberg free from sanctions in this case.

### PITTMAN, C.J., JOINS THIS OPINION.

1. Technically, the claim for corporate funds unlawfully expended would belong to QPI. However, all remaining claims of QPI were assigned to Wittjen by the bankruptcy court. Thus, the circuit court ordered that the corporate funds be repaid to Wittjen.

2. The name "Wittjen" has been inconsistently spelled in this case. The style of the case has "Whitjen" listed as a party, while the majority refers to him as "Wittjen." The name is also spelled "Wittjen" in a variety of documents from the lower court. The majority refers to the party as "Wittjen", and since this writer is responding to the majority, this writer has referred to the party as "Wittjen."

3. Wyssbrod did not appeal in this case, and therefore, we cannot address the attorney's fees assessed against him by the lower court.

4. The original complaint had listed W.W. Companies as a party plaintiff, but it was later discovered that this company was actually a sole proprietorship run by Wyssbrod, and therefore, this company was dropped from the complaint.

5. Pursuant to the February 23, 1999, Order of the lower court, the court did order a judgment against Omar Craig, Sidney Beck, and Martin Aussenberg for the attorney's fees they received from the corporate funds of QPI. However, this judgment goes to issue #3 of the majority's opinion, and is irrelevant as to attorney's fees assessed against Wyssbrod and Aussenberg, jointly and severally.