[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 223 
¶ 1. This appeal involves a father who failed to make court-ordered child support payments and was found guilty of criminal contempt and sentenced to serve thirty days in jail. Bridget Bradley filed a complaint seeking to enforce and modify an earlier child support decree. The complaint was later amended to include the request for the imposition of punitive damages against Eric Shannon Moulds, the father of the couple's child. Although the chancellor refused to award punitive damages, he did find Moulds guilty of criminal contempt, sentencing him to ninety days in the county jail, with sixty days suspended. Finding that the issue of criminal contempt was not properly before the court, we reverse his conviction and sentence. On cross-appeal we affirm the denial of Bridget's claim for an award of punitive damages, but we reverse and remand for the Chancellor to review the award of child support based on the correct amount of Moulds's adjusted gross income.
 FACTS AND PROCEEDINGS BELOW
¶ 2. On January 12, 1996, the Chancery Court of George County entered a decree finding Eric Shannon Moulds to be the natural father of Randy Moulds. The decree ordered Moulds, at the time a college student and football player at Mississippi State University, to pay weekly child support in the amount of fifty dollars to Randy's mother, Bridget Bradley. The decree also ordered Moulds to provide medical and dental insurance for Randy when he was financially able to do so. Moulds is also the natural father of three other children by other women, for whom he is currently paying child support.
¶ 3. Following his collegiate playing career, Moulds was drafted by the Buffalo Bills of the National Football League, where he earned an annual salary in excess of $1 million. Despite his improved financial condition, between January 12, 1996, and September 21, 1998, Moulds paid Bradley only $350 in child support and provided no insurance. On September 14, 1998, Bradley filed an amended complaint seeking to enforce the earlier child support decree and to increase the weekly support amounts.[1] On January 7, 1999, Moulds finally paid off his child support arrearage by tendering a check to Bradley in the amount of $7,108.29. On January 11, 1999, Bradley filed a second amended complaint seeking, among other things, an increase in the child support amounts and the imposition of punitive damages for Moulds's past failure to pay child support. At the hearing, held May 11, 1999, the Chancellor raised the possibility of jail time as punishment for Moulds. Bradley had not requested incarceration in her pleadings, and, upon being questioned by the Chancellor, specifically said that she preferred that Moulds be required to pay her punitive damages and not face incarceration. The Chancellor nevertheless found Moulds guilty of wilful, contumacious and criminal contempt and sentenced Moulds to ninety *Page 224 
days in the county jail, with sixty days suspended. The Chancellor also found Moulds's increased income was a material change in circumstances and increased Moulds's monthly child support obligation from $200 per month to $1,000 per month.
¶ 4. Moulds filed a timely appeal to this Court from the Chancellor's order finding him guilty of criminal contempt and sentencing him to jail. Bradley cross-appealed, arguing that the amount of child support awarded by the Chancellor inadequate and that the Chancellor erred in not awarding punitive damages against Moulds.
 DISCUSSION Whether Moulds was deprived of due process of law when the chancery court convicted him of criminal contempt and sentenced him to jail for 30 days?[2]
¶ 5. Moulds argues that the Chancellor improperly ordered him incarcerated for criminal contempt without meeting the due process requirements applicable to criminal contempt proceedings. We agree.
¶ 6. The record clearly indicates that the Chancellor found Moulds to be guilty of criminal, rather than civil, contempt. Although a Chancellor has discretion to impose sanctions for both criminal and civil contempt, there is an important distinction between these two forms of contempt. This Court has explained that civil contempt is to coerce action while criminal contempt is to punish for violation of an order of court:
 If the purpose of the proceedings is to coerce action or non-action by a party, the order of contempt is characterized as civil. This type contempt proceeding is ordinarily instituted by one of the parties to the litigation who seeks to coerce another party to perform or cease performing an act. The order of contempt is entered by the court for the private benefit of the offended party. Such orders, although imposing a jail sentence, classically provide for termination of the contemnor's sentence upon purging himself of the contempt. The sentence is usually indefinite and not for fixed term. Consequently, it is said that the contemnor `carries the key to his cell in his own pocket.' [citations omitted] On the other hand, a criminal contempt proceeding is maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court.
Newell v. Hinton, 556 So.2d 1037, 1044 (Miss. 1990); see also Sappingtonv. Sappington, 245 Miss. 260, 147 So.2d 494, 498 (1962); Miss. Code Ann. §§ 9-1-17 9-5-87 (1991 Supp. 2000).
¶ 7. There are two forms of criminal contempt: direct and constructive. Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Varvaris v. State,512 So.2d 886, 887 (Miss. 1987). Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed, though we have stated that it is wise for a judge faced with personal attacks to wait until the end of the proceedings and have another judge take his place. Purvis v. State, 657 So.2d 794, 798 (Miss. 1995) (citing Mayberry v. Pennsylvania, 400 U.S. 455, *Page 225 
463-64, 91 S.Ct. 499, 504, 27 L.Ed.2d 532 (1971)).
¶ 8. Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court. Colemanv. State, 482 So.2d 221, 222 (Miss. 1986); Wood v. State, 227 So.2d 288
(Miss. 1969). Because the alleged contempt (failure to make court-ordered child support payments) occurred outside the presence of the court and Moulds had already paid his obligations, the jail time imposed by the Chancellor was for constructive criminal contempt. In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing. Purvis, 657 So.2d at 798 (citingWood, 227 So.2d at 290).
¶ 9. The record clearly supports Moulds's assertion that he was not provided with any notice that he would be tried for criminal contempt at the May 11, 1999, hearing. The contempt sought by Bradley was for the imposition of civil, rather than criminal, sanctions. Bradley's complaint repeatedly states, for example, that "the defendant is in wilful contempt of Court, and this Court should take whatever action is necessary to compel the defendant" to take various actions to comply with the previous orders of the court, including releasing tax returns and providing his address and telephone number. A review of the record indicates that when questioned by the Chancellor about the possibility of Moulds being incarcerated, counsel for Bradley emphatically stated, "I do not think he should go to jail. . . . Incarceration would be counterproductive for my client. . . . If he goes to jail that could affect his income. . . . What we asked for in the complaint, we felt sufficient to get his attention without the need of putting him in jail. . . ." Given the language of the complaint and the above exchange, it is clear that what was sought was the use of civil contempt sanctions to compel, rather than criminal contempt sanctions to punish Moulds.
¶ 10. Without notice of criminal contempt sanctions, Moulds's due process rights were violated. Accordingly, we reverse Moulds's criminal contempt conviction and jail sentence.
CROSS-APPEAL ISSUES
 I. Whether the trial court erred in awarding Bradley only $1,000 per month child support where Moulds, had an adjusted gross income of more than $750,000.00.
¶ 11. Bradley argues on cross-appeal that the Chancellor erred in requiring Moulds to pay only $1,000 per month in child support. Bradley argues that the Chancellor miscalculated Moulds's adjusted gross income, and the record supports this assertion. In providing his rationale for increasing Moulds's child-support obligation to $1,000 per month, the Chancellor stated, "This Court has looked at the living expenses of the father which is alleged to be $14,170 a month, which is due out of his adjusted gross income of $32,108.57 a month."
¶ 12. Bradley suggests that the Chancellor arrived at the erroneous conclusion that Moulds's annual adjusted gross income was $ 385,302.84 by deducting taxes from Moulds's adjusted gross income provided in his U.C.C.R. 8.05 disclosure statement. Bradley argues that the Chancellor, in reaching his decision, substantially underestimated Moulds's adjusted gross income by more than $300,000 a year:
 That the adjusted gross income of the defendant (Moulds) annually was $385,302.84. In fact, the adjusted gross income was $ 761,435.11. The Chancellor *Page 226 
apparently went solely by Moulds' 8.05 statement, without comparing it to Moulds' tax returns. As a result, while the monthly salary was stated as $ 54,166.57 plus 5000 for endorsements, the 1997 tax return attached to the 8.05 showed wages of $ 1,304,163 which alone equates to a gross monthly salary of $ 108,680.25. Apparently, Moulds listed his net monthly salary on the 8.05, and then the Chancellor compounded the error by deducting the taxes and allowed withholdings from it, which resulted in the $ 300,000+ shortage in the finding as to Moulds' income.
It is apparent that the Chancellor incorrectly calculated Moulds's adjusted gross income. Moulds does not argue otherwise in his brief.
¶ 13. However, the Chancellor expressly stated that he was basing his award of $1,000 per month in child support on the needs of the child rather than on the amount of Moulds's salary. In making the required on the record finding for a guidelines departure pursuant to Miss. Code Ann. § 43-19-101 (2000),[3] the Chancellor stated that:
 [T]he Court finds that the application of the guidelines in this case are unjust and inappropriate due to the evidence presented as to the needs of the child. Now, we do look at the ability of the father to pay child support, but that is only one factor in reference to the child support. The paramount concern are [sic] the needs of the child. Therefore, the Court finds that the child support should be increased to $ 1,000/month and this should be retroactive to the filing of the complaint on October 15, 1996.
¶ 14. In child support modification proceedings the Chancellor is accorded substantial discretion and is charged to consider all relevant facts and equities to the end that a decree serving the best interest of the child may be fashioned. This Court's standard of review on appeal is the familiar abuse of discretion standard. Clark v. Myrick, 523 So.2d 79, 82 (Miss. 1988).
¶ 15. In making his ruling, the Chancellor expressly considered and discussed such factors as the child's financial and medical needs, age, cost of schooling, inflationary influences in the community, Moulds's level of income, and the financial condition of Bradley. Even cases in which a parent has extraordinary wealth, the essential purpose of child support remains the support of the child. Miss. Code Ann. §93-9-7 (1994). However, we are unable to conclude whether an award of $1,000 per month for the support of one child is adequate without the benefit of the Chancellor's analysis using Moulds's correct annual adjusted gross income. The marked disparity between Moulds's income and the amount he is required to pay in child support warrants that this issue be revisited by the Chancellor.
¶ 16. As such, the Chancellor's ruling on the issue of the amount of child support payable by Moulds is reversed and remanded.
 II. Whether the trial court erred in dismissing Bradley's claim for punitive damages.
¶ 17. There is no precedent in this State's jurisprudence for the award of punitive damages as a sanction for failing *Page 227 
to pay child support. Moreover, Bradley does not cite any authority from other jurisdictions in support of this practice. After a diligent search, we could find only one court awarding punitive damages for criminal contempt, which was deemed a fine, payable to the court, not the opposing party.[4] Accordingly, the Chancellor did not err in denying Bradley's claim for an award of punitive damages.
 CONCLUSION
¶ 18. Moulds's conviction for criminal contempt and imposition of jail sentence is reversed. The trial court's judgment is affirmed as to the dismissal of the claim for punitive damages, but reversed and remanded for reconsideration of the child support issue based upon Moulds's correct adjusted annual gross income. Pending the Chancellor's decision on remand of the child support issue, Moulds shall continue to pay Bradley $1,000 per month in child support for the use and benefit of Randy Moulds.
¶ 19. ON DIRECT APPEAL: REVERSED. ON CROSS-APPEAL: AFFIRMED IN PARTAND REVERSED AND REMANDED IN PART.
PITTMAN, C.J., SMITH, MILLS, AND COBB, JJ., CONCUR.
EASLEY, J., CONCURS IN RESULT ONLY.
DIAZ, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS ANDEASLEY, JJ. SMITH, WALLER AND COBB, JJ., JOIN THIS OPINION IN PART.
BANKS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATEWRITTEN OPINION JOINED BY McRAE, P.J.
[1] Bradley originally filed a Complaint for Modification and Contempt on October 18, 1996, on which no action was taken until the Amended Complaint was filed October 15, 1998.
[2] Although Moulds raises a second issue regarding certain remarks and conduct of the Chancellor in determining to incarcerate Moulds, we find his first issue dispositive, and decline to address the second issue.
[3] (4) In cases in which the adjusted gross income as defined in this section is more than Fifty Thousand Dollars ($50,000.00) or less than Five Thousand Dollars ($5,000.00), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.
[4] See Marriage of Nussbeck, 974 P.2d 493, 498-99 (Colo. 1999).