# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00749-COA

IN THE MATTER OF THE ESTATE OF VIVIAN BYAS, DECEASED: VICTOR BYAS AND MARY BYAS                      **APPELLANTS**

v.

PAULETTE BYAS                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/2015 |
| TRIAL JUDGE: | HON. MARIE WILSON |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | ALSEE MCDANIEL |
| ATTORNEY FOR APPELLEE: | VALLRIE LANETTE DORSEY |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| TRIAL COURT DISPOSITION: | APPELLANTS FOUND IN CONTEMPT AND ORDERED TO PAY FINES AND $677 IN ATTORNEY'S FEES |
| DISPOSITION: | REVERSED AND RENDERED - 06/13/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this case, we must determine whether the chancellor erred in finding both Victor Byas and Mary Byas in contempt. Because the record contains insufficient evidence of contempt regarding both Victor and Mary, we reverse and render.

## PROCEDURAL HISTORY

¶2.     This case stems from a probate matter filed by Paulette Byas in the Sunflower County Chancery Court. Paulette's mother, Vivian Byas, died on June 18, 2014. Victor, Mary, and

Paulette are three of Vivian's children.[1] Paulette filed a petition to probate Vivian's will. After a hearing, the chancellor entered an order on August 13, 2014, to continue the probate matter. The chancellor also ordered the parties involved to remove their personal belongings from Vivian's house. The chancellor ordered that the house be vacated and remain locked until the matter was resolved. The chancellor further appointed Victor to "temporarily collect rental income, [and] pay the mortgages of [Vivian] along with the utilities and homeowners' insurance." The locks on the house were changed, and the keys were retained by the Sunflower County Chancery Clerk.

¶3. On October 27, 2014, Paulette filed a motion for contempt, alleging that Victor and Mary had entered the house in violation of the previous order. Paulette claimed that Mary had been living in the house.

¶4. After a hearing on February 12, 2015,[2] the chancellor found both Victor and Mary in contempt for failing to abide by the court's prior order. The chancellor fined Victor $250 and Mary $500. The chancellor also ordered Victor and Mary to be equally responsible for $677 in attorney's fees.

¶5. Victor and Mary now appeal, arguing the chancellor erred in finding them in contempt.

**FACTS**

¶6. Paulette testified at the hearing that someone told her Victor and Mary had been seen

---

[1] The record is conflicting as to whether Vivian had eight or nine children.

[2] Victor and Mary represented themselves.

going in and out of Vivian's house after the chancellor ordered the house be vacated. Paulette stated she saw Mary's car in the driveway on one occasion. Paulette admittedly never spoke with Victor or Mary about their actions.

¶7. Tyrone Hays, Vivian's brother, testified that he lived near the house and drove past it frequently. Hays stated that he saw Mary sitting outside the house on a regular basis. Hays said he had also seen Mary enter and exit the house. On one occasion, he saw Victor and Mary talking outside the house. On cross-examination, however, Hays said he never saw Victor or Mary in the house.

¶8. Cordell Thomas, Paulette's boyfriend, spoke with Victor on the phone. Thomas testified that Victor said he had a key to the house, and that he had been in the house making repairs. Thomas stated he heard the house had recently caught on fire.

¶9. Stanley Johnson, a friend of Vivian, saw Mary several times sitting by the carport of the house. Johnson had also seen Victor at the house. Johnson admittedly had never seen Victor in the house and had only seen Mary exiting the house one time.

¶10. Victor testified that the house had caught on fire as a result of a burglary. After which, Victor stated he got the key from the chancery clerk in order to install an alarm system. Victor testified that he also entered the house to water Vivian's plants and to combat a rat infestation. Victor said he never let anyone else in the house and never saw Mary in the house during his weekly visits to check on the property. Victor testified that Mary lived with him until he got her a trailer. This trailer was parked next to Vivian's house. Victor admitted that after the hearing in August, he tried to get permission from the chancellor to enter the

home. The record does not indicate if the chancellor officially granted or denied his request. And the record on appeal does not include a transcript of the August hearing.

¶11. Mary testified that she lived in the trailer by Vivian's house and parked her car in the carport after the house was burglarized to deter further criminal activity. Mary stated that she did enter the house after the fire in order to secure a window that had been broken. She was nearby when the fire broke out and was at the house when the fire department responded.

## DISCUSSION

¶12. In this contempt action, the first question to determine is whether the actions of Victor and Mary amounted to civil or criminal contempt. "If the primary purpose [of the contempt order] is to enforce the rights of private party litigants or enforce compliance with a court order, the contempt is civil." *Purvis v. Purvis*, 657 So. 2d 794, 796 (Miss. 1994). Criminal contempt is designed to punish the defendant for disobedience of a court order. *In re Smith*, 926 So. 2d 878, 887-88 (¶13) (Miss. 2006). "This is proper only when the contemnor has wilfully, deliberately and contumaciously ignored the court, or the court's directive." *Id.* As Victor and Mary were punished for disobeying a court order and ordered to pay fines to the court, this case is a matter of criminal contempt. *See, e.g., Hanshaw v. Hanshaw*, 55 So. 3d 143, 147 (¶14) (Miss. 2011) ("[C]onstructive criminal contempt punishes a party for noncompliant conduct outside the court's presence. . . . The contemnor must pay constructive criminal-contempt fines to the court, rather than to an injured party.").

¶13. Next, it is our duty to determine whether the record proves Victor's and Mary's guilt beyond a reasonable doubt. *Smith,* 926 So. 2d at 888 (¶13). We "proceed[] ab initio to

4

determine whether the record proves the appellant guilty of contempt beyond a reasonable doubt." *Purvis*, 657 at 797 (citation omitted). The burden of proof is on the party asserting that contemptuous conduct has occurred. *In re Hampton*, 919 So. 2d 949, 954 (¶13) (Miss. 2006).

¶14. There are two forms of criminal contempt: direct contempt and constructive contempt. "Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice." *Moulds v. Bradley*, 791 So. 2d 220, 224 (¶7) (Miss. 2001). The punishment for direct criminal contempt "may be meted out instantly by the judge in whose presence the offensive conduct was committed . . . ." *Id.* Constructive criminal contempt, however, involves actions that occur outside the presence of the court. *Id.* at 225 (¶8). Most importantly, the contemnors must be provided certain procedural due-process safeguards such as a specification of the charges against them, notice, and a hearing. *Id.* Here, those due-process safeguards were met.

¶15. The motion for contempt filed by Paulette alleges that Victor and Mary were in willful contempt of the order by entering Vivian's house.

¶16. In regard to Victor, the chancellor found the following:

> The only thing the judge ordered you to do was to pay the mortgage, pay the insurance, and there's not even an upkeep on here, and collect the rent. . . . But I understand why you felt the responsibility to protect the property itself, the contents in the property, and *that's reasonable and I do understand that*. But that is not what was ordered and that is contempt of court. Now [the chancery clerk] gave you the key probably because there was a fire, but you never returned the key . . . and perhaps, the house does need a caretaker. But it was your responsibility to petition the court to be appointed the caretaker of the

house so that you could go there every week. . . . A house that is vacant and nobody there for an extended period of time is an invitation for break-ins and fires and everything else. So, *your intent was probably in the right place* in terms of being a caretaker, but the manner in which you proceeded was not.

(Emphasis added). Upon review of the record, we cannot find Victor guilty beyond a reasonable doubt. Victor admittedly got the key to enter the house, but only after the fire in order to install an alarm system, to water Vivian's plants, and to combat a rat infestation. There was no evidence that Victor "wilfully, deliberately, and contumaciously" ignored the court order. In fact, as previously stated, the chancellor recognized that Victor acted reasonably and with the right intent when trying to care for Vivian's house.

¶17. In regard to Mary, we find the same. Much of the evidence about Mary simply showed she had been seen outside the house. Mary testified that her trailer was parked next to Vivian's house and that she parked her car in the carport to deter burglars. Mary admittedly entered the house after the fire occurred in order to secure a broken window, but there was no other clear evidence that she "wilfully, deliberately, and contumaciously" ignored the court order. In fact, the chancellor stated the evidence regarding Mary's contempt was "not really clear."

¶18. Because the evidence does not support a finding of constructive criminal contempt regarding both Victor and Mary, we reverse and render.

¶19. **THE JUDGMENT OF THE SUNFLOWER COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**