# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01317-COA

**GILBERT S. MACVAUGH III**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

DATE OF JUDGMENT:                    11/10/2021
TRIAL JUDGE:                         HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED:           RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              WILLIAM CHARLES BELL
ATTORNEY FOR APPELLEE:               DREW DOUGLAS GUYTON
NATURE OF THE CASE:                  CIVIL - OTHER
DISPOSITION:                         AFFIRMED - 10/24/2023
MOTION FOR REHEARING FILED:

**BEFORE WESTBROOKS, P.J., McDONALD AND McCARTY, JJ.**

**WESTBROOKS, P.J., FOR THE COURT:**

¶1.     Dr. Gilbert Macvaugh III appeals from the trial court's order for sanctions and attorney's fees after he failed to submit an expert witness report he was hired by the State to produce. Macvaugh claims that the order for sanctions was actually a contempt proceeding and that he did not receive the adequate due process protection of notice. Our review of the record indicates that the proceedings did not rise to the level of a contempt proceeding. The trial court was acting within its inherent power to control its courtroom when it ordered Macvaugh to reimburse the funds paid to him for the report he failed to produce and to pay attorney's fees to the State. Accordingly, we affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY

¶2.     This case stems from an unusual set of facts that involves both the State and a post-conviction relief (PCR) petitioner jointly requesting a trial court to require an expert witness to perform the job he was hired by the State to do.  Petitioner Devin Bennett filed a PCR motion in 2008.  In 2013, the State filed a motion for a mental evaluation of Bennett.  In August 2014, the trial court ordered a mental evaluation to be performed, and in August 2015, the trial court ordered Macvaugh to evaluate Bennett.

¶3.     Macvaugh examined Bennett in November 2015.  Per the court's order, the report was due thirty days later.  Macvaugh filed several motions to extend the time to submit his report because he allegedly had not received materials from another doctor who had also evaluated Bennett.  As of May 1, 2017, Macvaugh confirmed he had received all the information he needed for his evaluation.  At that time, the parties agreed that his report was due at the end of May 2017.  Upon receiving this confirmation from Macvaugh, on June 8, 2017, the trial court issued an order extending the due date to June 28, 2017. The rest of the delays described below are solely attributable to Macvaugh.

### A.     The First Hearing - Motion to Compel (Nov. 13, 2017)

¶4.     On June 28, 2017, Macvaugh informed the State's attorney that he had injured himself.  A new agreed due date was set for July 7, 2017.  This deadline passed with no communication from Macvaugh.  On July 10, 2017, Macvaugh texted the State's attorney to say he had been camping and had no cellular service.  He assured the State's attorney that he would send the report when he arrived home later that day, but he never sent it.  On July 26, 2017, the State filed a sealed motion to compel after it made several additional attempts to

2

communicate with Macvaugh with no response. The State issued a subpoena for Macvaugh to attend the motion-to-compel hearing set for November 13, 2017. The transcript for this hearing is not included in the record on appeal. Subsequently, on November 17, 2017, an agreed order was filed, stating that the report was due no later than November 14, 2017.

### B. The Second Hearing - Motion for Sanctions (March 5, 2018)

¶5. On November 30, 2017, the State filed its initial motion for sanctions and to substitute an expert after Macvaugh still had not produced his report in accordance with the agreed order. The record on appeal does not include a transcript of the March 5, 2018 hearing on this motion. But the State's March 9, 2018 amended motion for sanctions (and to substitute expert) notes that Macvaugh arrived to this hearing thirty minutes late and only provided a seven-page summary of the report. According to the State, the seven-page summary indicated that the full report would be furnished after Macvaugh was paid for his services.

### C. The Third Hearing - Amended Motion for Sanctions (May 7, 2018)

¶6. On March 9, 2018, the State amended its motion for sanctions and to substitute the expert and included proof that the State had already paid Macvaugh $19,187.50 for his work but was not provided the report. The State's amended motion asked the trial court to "issue a show cause order for Dr. Macvaugh, hold Dr. Macvaugh in contempt of court and impose appropriate sanctions including attorney's fees along with reimbursing the State $19,187.50 and any other relief this Court deems necessary." Petitioner Bennett, through his attorney, issued two subpoenas for Macvaugh's appearance at the hearing scheduled for May 7, 2018. One subpoena directed Macvaugh to appear and show cause why sanctions should not issue

3

for his failure to comply with the court's November 17, 2017 order, signifying that the hearing would also be a show cause hearing for Macvaugh. Another subpoena required Macvaugh to bring all his "files, notes and full report of your evaluation of Devin Bennett" to the same hearing. This second subpoena specifically stated that it was "intended to direct you to bring your full report." (Emphasis added).

¶7. The transcript of this hearing reflected the hearing's unusual nature. First of all, Macvaugh failed to appear.[1] Second, at the hearing, both the State's attorney and the petitioner's attorney argued their points in solidarity, supporting one another's contentions regarding their attempts to obtain the report from Macvaugh. Next, the attorneys both agreed that Macvaugh was served with a subpoena and a copy of the motion for the hearing. The attorneys also agreed that the petitioner served the subpoena for the May 7, 2018 hearing. Finally, although the hearing started at noon, it was not until 12:16 p.m. that Macvaugh's office manager finally emailed the full report to the State's attorney, the court administrator, and the petitioner's attorney. At that point, however, all the attorneys were in the courtroom, and none of them received the report until after the hearing ended.

¶8. On May 14, 2018, the trial court issued an order granting the motion to substitute a new expert witness and sanctioned Macvaugh for his "repeated failure to comply with [the court's] orders." Under its inherent authority, the trial court required Macvaugh to disgorge to the State $19,187.50, "which [was] to reimburse the State for payment made to

_____

[1] Subsequent motions by Macvaugh and the State maintained that Macvaugh arrived at the courthouse two hours late (after the hearing had concluded) and stayed in the courthouse for the rest of the day.

4

[Macvaugh] in this matter." The disgorgement was "subject to reduction of an amount equivalent to reasonable compensation for the summary report . . . supported by proof of actual cost associated with work necessary to produce the summary report." The court also awarded attorney's fees to the State in the amount of $1,790.75 for time "which the State has incurred related to efforts that were required to obtain Dr. Macvaugh's compliance."

¶9. On August 6, 2018, Petitioner Bennett filed a motion to cite Macvaugh in direct civil contempt, but in December 2018, he withdrew that motion as moot.

### D. The Fourth Hearing - Macvaugh's Motion to Set Aside Sanctions (Nov. 10, 2021)

¶10. On September 26, 2018, Macvaugh's new attorney William Bell filed his initial motion to set aside the May 14, 2018 sanctions order, arguing that Macvaugh was actually held in contempt of court. Through Bell, Macvaugh argued that his "contempt proceeding" required a separate petition for contempt and a summons pursuant to Mississippi Rule of Civil Procedure 81. Macvaugh argued that because there was no Rule 81 summons to provide proper notice, the May 14, 2018 sanctions order that stemmed from the May 2018 hearing should be void ab initio. He alternatively argued that the subpoenas issued to Macvaugh for the May 7, 2018 hearing were invalid because no witness or mileage fees were tendered to Macvaugh at the time of the service. In October 2018, Macvaugh filed an amended motion to set aside the sanctions order, which was simply amended to include with his initial assertion an argument under Mississippi Rule of Criminal Procedure 32 (governing contempt).

¶11. On March 25, 2021, approximately two-and-a-half years later, Macvaugh filed a

motion to set a hearing for the amended motion to set aside sanctions. The hearing to set aside the May 14, 2018 sanctions order took place on November 10, 2021. The trial court was not convinced by Macvaugh's arguments that he should have received a Rule 81 summons. The court denied his motion to set aside the sanctions. The trial court found that "Macvaugh was served with numerous subpoenas . . . to appear, subpoena duces tecum, and he just blew them off." The trial court continued, "Then later when he did appear in court, he admitted that he had intentionally withheld some of the items that he . . . was told to bring." The trial court noted that "this court has to have some ability to move cases forward, and Dr. Macvaugh's actions single-handedly held up a death penalty PCR for almost three years." An order denying Macvaugh's amended motion to set aside the judgment was immediately issued the same day as the hearing.

¶12. Despite this denial, on November 10, 2021, the trial court provided Macvaugh a Rule 54(b) certification[2] so that he could appeal his issue. Macvaugh's timely notice of appeal listed both the original May 14, 2018 order and the November 10, 2021 order denying his motion to set aside the judgment. On appeal, Macvaugh's sole issue is "whether a trial court can enter a contempt and sanctions judgment without a summons, and without notice to Dr.

---

[2] Rule 54(b) states:

> When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment. . . .

M.R.C.P. 54(b).

Macvaugh that the court would hear the contempt motion."

**STANDARD OF REVIEW**

¶13. A "trial court has considerable discretion in the imposition of sanctions." *Cunningham v. Mitchell*, 549 So. 2d 955, 958 (Miss. 1989) (quoting *White v. White*, 509 So. 2d 205, 209 (1987); *Kilpatrick v. Miss. Baptist Med. Ctr.*, 461 So. 2d 765, 767 (Miss. 1984)). The Court of Appeals utilizes an abuse of discretion standard when reviewing a trial court's grant or denial of sanctions. *Walker v. Cellular S. Inc.*, 309 So. 3d 16, 27 (¶42) (Miss. Ct. App. 2020) (citing *Ill. Cent. Gulf R.R. Co. v. McLain*, 174 So. 3d 1279, 1284 (¶12) (Miss. 2015)). The Court first determines whether the trial court applied the correct legal standard. *Smith v. Hickman, Goza & Spragins PLLC*, 265 So. 3d 139, 143 (¶5) (Miss. 2019) (citing *Barrett v. Jones, Funderburg, Sessums, Peterson & Lee LLC*, 27 So. 3d 363, 369-70 (¶22) (Miss. 2009)). If the trial court applied the correct standard, this Court considers whether the decision was one of several reasonable ones that could have been made. *Id*. at 370 (¶22). "We will affirm a trial court's decision unless we have a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Walker*, 309 So. 3d at 27 (¶42) (citing *Jones v. Jones*, 995 So. 2d 706, 711 (¶13) (Miss. 2008)).

**DISCUSSION**

**I.      Sanctions for Disregarding Subpoena**

¶14. Macvaugh argues that the May 7, 2018 hearing on the amended motion for sanctions was actually a contempt proceeding. His sole issue is that a contempt proceeding was held

7

without a Rule 81 summons, and thus his constitutional right to due process by notice was violated. But these proceedings did not rise to the level of contempt proceedings.[3] Furthermore, the court used the correct legal standard to sanction Macvaugh for the failure to obey a subpoena, which the trial court had the authority to do under Mississippi Rule of Civil Procedure 45 and its inherent authority to control the proceedings before the court. Thus, we affirm the trial court's ruling.

¶15. A sanction is defined as both "[a] provision that gives force to a legal imperative by either rewarding obedience or punishing disobedience" and "[a] penalty or coercive measure that results from failure to comply with a law, rule, or order." *Sanction*, Black's Law Dictionary 1608 (11th ed. 2019). Sanctions can be brought under various court rules such as Mississippi Rules of Civil Procedure 11(b),[4] 37(e),[5] and 45(f).[6] The United States

---

[3] Macvaugh argues that the trial court held him in contempt. He conflates the procedural disciplinary prerogatives of the trial court. To clear any confusion, our analysis addresses these disciplinary measures although they do not control this Court's opinion. The specially concurring judge believes our analysis here is dictum, but this issue's resolution requires more than a perfunctory conclusion.

[4] "If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees." M.R.C.P. 11(b).

[5] "[T]he court may impose upon any party or counsel such sanctions as may be just, including the payment of reasonable expenses and attorneys' fees, if any party or counsel (i) fails without good cause to cooperate in the framing of an appropriate discovery plan by agreement under Rule 26(c), or (ii) otherwise abuses the discovery process in seeking, making or resisting discovery." M.R.C.P. 37(e).

[6] "[U]pon a showing that the subpoena power is being exercised in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the party or the person upon

Supreme Court has found that its district courts could impose sanctions based on "a court's inherent power to police itself." *Chambers v. NASCO Inc.*, 501 U.S. 32, 46 (1991). In *Chambers*, a plaintiff "abused the judicial process" by placing properties at issue out of reach of the court, attempting to hold unwarranted depositions, and proceeding with "a series of meritless motions and pleadings and delaying actions." *Id*. at 37-38. The district court imposed sanctions in the form of attorney's fees for the abusive conduct. *Id*. at 40. The Supreme Court affirmed these sanctions:

> Like the Court of Appeals, we find no abuse of discretion in resorting to the inherent power in the circumstances of this case. . . . Much of the bad-faith conduct by Chambers, however, was beyond the reach of the Rules; his entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court, and the conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address.

*Id.* at 50-51. While not binding on this Court, this opinion is instructive, as it illustrates that sanctions may be used to "vindicat[e] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Id*. at 46; *accord McPhail v. McPhail*, 357 So. 3d 602, 614 (¶68) (Miss. 2023) ("As the Supreme Court has made clear, "[i]t is beyond dispute that [this Court does] not hold a supervisory power over the [state] courts." (quoting *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006))).

¶16.    Additionally, the Mississippi Supreme Court has held that "where there is no specific

_____

whom the subpoena is served, the court in which the action is pending shall order that the subpoena be quashed and may enter such further orders as justice may require to curb abuses of the powers granted under this rule. To this end, the court may impose an appropriate sanction." M.R.C.P. 45(f).

statutory authority for imposing sanctions, courts have an inherent power to protect the integrity of their processes, and may impose sanctions in order to do so." *Est. of McLemore v. McLemore*, 63 So. 3d 468, 487 (¶53) (Miss. 2011) (citing *In re Est. of Thomas*, 28 So. 3d 627, 637 (¶34) (Miss. Ct. App. 2009)).  The Mississippi Supreme Court has "recognized and endorsed a trial judge's duty to control the courtroom, using reasonable measures to efficiently move matters along." *Donaldson v. Cotton*, 336 So. 3d 1099, 1106 (¶17) (Miss. 2022) (internal quotation mark omitted) (quoting *In re Blake*, 912 So. 2d 907, 914 (¶16) (Miss. 2005)); *see also Aeroglide Corp. v. Whitehead*, 433 So. 2d 952, 953 (Miss. 1983) ("[A]ll courts possess the inherent authority to control the proceedings before them including the conduct of the participants.").  Furthermore, trial courts have the "inherent authority to impose sanctions upon those who abuse the judicial process." *Tricon Metals & Servs. Inc. v. Topp*, 537 So. 2d 1331, 1335 (Miss. 1989); *see, e.g.*, *Allison v. State*, 436 So. 2d 792, 796 (Miss. 1983); *Scott v. State*, 310 So. 2d 703, 706 (Miss. 1975).

¶17.    A stronger level of correction by the court would be a finding of contempt.  Contempt is defined as "[c]onduct that defies the authority or dignity of a court or legislature.  Because such conduct interferes with the administration of justice, it is punishable, usu[ally] by fine or imprisonment." *Contempt*, Black's Law Dictionary 397 (11th ed. 2019).  "To impose a purely punitive, noncompensatory fine the offending party must be held in contempt." *Cooper Tire & Rubber Co. v. McGill*, 890 So. 2d 859, 867 (¶31) (Miss. 2004).

¶18.    Contempt can be classified as either civil or criminal. *Id*. at 868 (¶35).  "In classifying a finding of contempt as civil or criminal, this Court focuses on the purpose for which the

10

power was exercised." *Id.* at (¶33) (citing *Purvis v. Purvis*, 657 So. 2d 794, 796 (Miss. 1994)). "The purpose of civil contempt is to compel compliance with the court's orders, admonitions, and instructions, while the purpose of criminal contempt is to punish." *Corr v. State*, 97 So. 3d 1211, 1214 (¶7) (Miss. 2012) (quoting *Graves v. State*, 66 So. 3d 148, 151 (¶¶11-12) (Miss. 2011)). "Civil contempt orders enforce a private party's rights or compel compliance with a court's order." *Hanshaw v. Hanshaw*, 55 So. 3d 143, 147 (¶13) (Miss. 2011) (citing *Purvis*, 657 So. 2d at 796). For civil contempt, "the contemnor pays any resulting penalty to the injured party." *Id.* "[A] civil contemnor "carries the keys to his prison in his own pocket" through his ability to comply with the court's orders and end his remedial sanction. *McPhail*, 357 So. 3d at 611 (¶44) (citing *Common Cause of Miss. v. Smith*, 548 So. 2d 412, 415 (Miss. 1989)). Conversely, penalties for criminal contempt "are designed to punish the contemnor for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with the court order." *Cooper Tire & Rubber Co.*, 890 So. 2d at 868 (¶35) (quoting *In re Williamson*, 838 So. 2d 226, 237 (¶29) (Miss. 2002)).

¶19.    Criminal contempt can be further broken down into two forms: direct and constructive. *In re Williamson*, 838 So. 2d at 237 (¶31). "Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice." *Id.* "The direct contemnor may be summarily punished because no evidence other than the court's own knowledge is required as the conduct was committed in the presence of the court." *Purvis*, 657 So. 2d at

11

797. "Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed." *In re Williamson*, 838 So. 2d at 237 (¶31). Thus, a party guilty of direct criminal contempt for conduct occurring in the presence of the court is not entitled to notice or a specific show-cause hearing. *See In re Smith*, 926 So. 2d 878, 889 (¶15) (Miss. 2006); *In re Hampton*, 919 So. 2d 949, 955 (¶17) (Miss. 2006).

¶20. On the other hand, "constructive criminal contempt punishes a party for noncompliant conduct outside the court's presence." *Hanshaw*, 55 So. 3d at 147 (¶14) (citing *Moulds v. Bradley*, 791 So. 2d 220, 225 (¶8) (Miss. 2001)). "In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing." *In re Williamson*, 838 So. 2d at 237 (¶31) (quoting *Moulds*, 791 So. 2d at 225 (¶8)). The United States Supreme Court has reasoned that this is because "criminal contempt is a crime in the ordinary sense[,] . . . and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826 (1994). Furthermore, "[t]he contemnor must pay constructive criminal-contempt fines to the court, rather than to an injured party." *Hanshaw*, 55 So. 3d at 147 (¶14) (citing *Common Cause of Miss. v. Smith*, 548 So. 2d 412, 416 (Miss. 1989)).

¶21. The classification of the type of contempt is critical because the due process protections vary based on the classification of the contempt. *C.W. v. Lamar County*, 250 So. 3d 1248, 1258 (¶38) (Miss. 2018). "[Constructive] criminal-contempt defendants are entitled

to notice under Mississippi Rule of Civil Procedure 81(d), which requires service of process." *Id*. at 1257-58 (quoting *In re McDonald*, 98 So. 3d 1040, 1045 (¶11) (Miss. 2012); *accord* M.R.C.P 81(d)(2). As stated above, direct criminal contempt is excepted from this rule. Because it occurs directly in front of the trial court and involves "words spoken or actions committed in the presence of the court[,] . . . punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed." *Cooper Tire & Rubber Co.* 890 So. 2d at 868 (¶35). "One accused of criminal contempt is entitled to the same protections as any criminal defendant." *Graves v. State*, 66 So. 3d 148, 152 (¶15) (Miss. 2011). These protections include the right to "notice . . . and . . . to be informed of the nature and cause of the accusation, of his rights to be heard, to counsel, to call witnesses, to an unbiased judge, to a jury trial, and against self-incrimination, and that he is presumed innocent until proven guilty beyond reasonable doubt." *Dennis v. Dennis*, 824 So. 2d 604, 609 (¶11) (Miss. 2002) (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798-99 (1987)).

¶22. Conversely, our courts have been inconsistent regarding whether civil contempt proceedings require Rule 81 summons. *See Hanshaw v. Hanshaw*, 55 So. 3d 143, 146 (¶10) (Miss. 2011) (reversing a civil contempt proceeding after lack of Rule 81 notice, among other errors); *Corr v. State*, 97 So. 3d 1211, 1216 (¶12) (Miss. 2012) (applying Rule 81 requirement specifically to criminal contempt cases); *Zebert v. Guardianship of Baker*, 129 So. 3d 972, 980 (¶21) (Miss. Ct. App. 2014) (applying *Corr* to find that failure to issue plaintiff a Rule 81 summons moot because contempt was civil in nature, not criminal). The

13

United States Supreme Court has reasoned that "[b]ecause civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required." *Bagwell*, 512 U.S. at 831. Like in *Zebert*, *Corr* specifically applies Rule 81 summons to criminal contempt cases to the exclusion of civil contempt matters. *Zebert*, 129 So. 3d at 980 (¶21).

¶23. Regardless, in the present case the trial court's requirement that Macvaugh reimburse the funds paid to him for the undelivered report failed to rise to the level of a contempt proceeding. It instead fell under the "inherent power to protect the integrity of their processes." *Est. of McLemore*, 63 So. 3d at 487 (¶53). Macvaugh received and ignored multiple subpoenas from the trial court that required him to appear and bring a copy of his full report. He did not comply with multiple scheduling orders and disregarded the court's demand to appear and show cause why sanctions should not be imposed. Macvaugh's bizzare behavior and numerous delays in producing his report had, according to the trial court, "single-handedly held up a death penalty PCR for almost three years." Given these facts, the trial court was well within its authority to sanction Macvaugh by requiring him to disgorge the funds paid to him for the service he did not provide to allow the State to retain another expert to evaluate Bennett so that the case could move toward its conclusion.

¶24. Moreover, the trial court's order strongly indicates that the reimbursement falls short of a contempt proceeding. The order's option for Macvaugh to reduce the amount disgorged by providing itemization of his completed work allowed Macvaugh an opportunity to eliminate the ordered disgorgement. But instead of reducing or eliminating the disgorgement

14

amount by showing he had earned his fees, Macvaugh requested a Rule 54(b) certification and appealed.[7] The reimbursement ordered was neither punitive nor compensatory. The order merely required that Macvaugh pay back the funds that the State had paid to him for a report he failed to produce so that the State could hire a new expert and continue on with the case or show that he earned the funds. The ordered reimbursement was a "reasonable measure" used to "control the courtroom" and "efficiently move matters along[.]" *Donaldson*, 336 So. 3d at 1106 (¶17). As such, and given the unusual circumstances of this case, this disgorgement order fell under the trial court's "inherent discretionary powers" to keep the trial court operational. *Id.* Because no contempt proceeding took place, the May 7, 2018 hearing did not require a separate contempt petition and Rule 81 summons as Macvaugh asserts.

¶25.    In addition to its inherent powers, the trial court has authority under Mississippi Rule of Civil Procedure 45 to issue sanctions. A person who has received a subpoena must respond or face consequences: "Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court . . . ." M.R.C.P. 45(g). This Court has noted that Rule 45(g) applies to non-parties and provides the "means by

---

[7] Because the ruling was certified under Rule 54(b) and Macvaugh appealed, he has lost his opportunity to reduce the amount he must disgorge to the State because the trial court's use of Rule 54(b) certifies the ruling as a *final judgment.* M.R.C.P. 54(b); *see Cox v. Howard, Weil, Labouisse, Friedrichs Inc.*, 512 So. 2d 897, 899 (Miss. 1987); *Ind. Lumbermen's Mut. Ins. Co. v. Curtis Mathes Mfg. Co.*, 456 So. 2d 750, 752 (Miss. 1984) ("When a trial judge makes an expressed determination that there is no just reason for delay and enters a final judgment, that judgment is released for appellate consideration."). Therefore, in this case, the trial court has no further jurisdiction to take into consideration evidence that would reduce the amount Macvaugh was ordered to disgorge.

which a

trial court is afforded the authority to sanction a non-party to a pending case." *State Farm Mut. Auto. Ins. Co. v. Jones*, 37 So. 3d 87, 91 (¶10) (Miss. Ct. App. 2009).

¶26. The language of Rule 45(g) specifically says that failure to obey a subpoena "*may* be deemed a contempt of the court from which the subpoena issued." M.R.C.P. 45(g) (emphasis added). The use of the permissive "may" logically means the court is not *required* to find contempt when one has disobeyed a subpoena but, instead, may opt for other alternatives in the court's discretion. Our courts "can employ . . . common sense regarding the time, trouble and effort involved in defending such proceedings, including most certainly reasonable and necessary out-of-court pretrial and trial preparation efforts." *Tricon Metals & Servs.*, 537 So. 2d at 1337. "Trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases." *Bowie v. Montfort Jones Memorial Hosp.*, 861 So. 2d 1037, 1042 (¶14) (Miss. 2003). Further, "trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril." *Id*. This discretion could reasonably include a trial court's requiring an expert witness who disobeyed a subpoena to disgorge funds that were paid to him for work not performed.

¶27. Macvaugh argues that his subpoenas for the May 7, 2018 hearing were invalid because no witness fee was paid to him as required under Rule 45(c). Rule 45(c) states in

16

pertinent part:

> Except when excused by the court upon a showing of indigence, the party causing the subpoena to issue shall tender to a non-party witness at the time of service the fee for one day's attendance plus mileage allowed by law.

M.R.C.P. 45(c). Our Court has previously found that when a lay witness did not receive this payment, "the subpoena had not been properly served by law." *East v. East*, 775 So. 2d 741, 747 (¶17) (Miss. Ct. App. 2000). But according to the advisory committee notes to the rules, Rule 45(c) is complementary to Mississippi Code Annotated sections 25-7-47 to -59 (Rev. 2018) (statutes governing witness fees). Pertinent to this case, section 25-7-53 states that "in any case, civil or criminal, . . . a witness who does not appear in court when called . . . [shall not] be entitled to receive compensation." Miss. Code Ann. § 25-7-53. Although this statute seems to apply to witness attendance fees (not the mandated attendance-plus-mileage required under Rule 45(c)), there is no reason not to apply that same logic here. Macvaugh did not appear at the May 7, 2018 hearing on the State's motion to substitute the expert witness and for sanctions even though he was ordered to appear and "show cause . . . why sanctions should not issue for failure to comply with" a court order. An expert who arguably was not acting in good faith or at a minimum was incredibly dilatory is not entitled to any fees under Rule 45(c).

¶28. Furthermore, the Rule also notes that "[w]hen the subpoena is issued on behalf of the State of Mississippi or an officer or agency thereof, fees and mileage need not be tendered in advance." M.R.C.P. 45(c). In response to this portion of the Rule, Macvaugh points out that it was the petitioner's attorney and not the State who actually issued the summons to

attend the hearing on the State's motion to substitute the expert and for sanctions. But in this case, in a very unusual set of circumstances, both the State and the petitioner were working in tandem in an attempt to bring Macvaugh and his final report before the trial court so that the case could proceed. The motion and the notice of hearing were filed by the State, while the petitioner issued and served the subpoenas. Furthermore, there are no cases to suggest that the technical defect of failing to pay an expert witness—an expert who is employed by one of the parties and is already getting paid for time and travel—should interfere because the subpoena witness fee was not paid. Under these very limited circumstances when the State is working with its opposing party to serve a subpoena on an expert who has already been paid for his time and travel costs, the failure to pay the witness fee for a subpoena under Rule 45 does not invalidate the subpoena. Accordingly, we find no abuse of discretion in the trial court's decision to utilize both its inherent powers and its authority under Rule 45 regarding subpoenas to impose sanctions based on the valid subpoenas issued and served by the petitioner under these facts.

## II. Attorney's Fees

¶29. In addition to disgorging the fees paid to him by the State, Macvaugh was ordered to pay the State attorney's fees in the amount of $1,790.75. This amount reflected the 27.25 hours (at a rate of $65.00 per hour) between July 12, 2017, and May 7, 2018, which the State spent in an attempt to retrieve the report from Macvaugh.

¶30. The Supreme Court has stated that "where a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney's fees and expenses

18

should be awarded to the wronged party." *McLemore*, 63 So. 3d at 487 (¶53) (citing *Selleck*, 517 So. 2d at 560). This premise has been applied in cases specifically where a party was required to pursue a failure to respond to a subpoena. *See Flechas v. Pitts*, 138 So. 3d 907, 913 (¶15) (Miss. 2014). Regardless, it almost goes without saying that "attorneys and parties must without fail obey orders of a court of competent jurisdiction, or risk the consequences." *Hawthorne v. Miss. State Hosp.*, No. 2022-WC-00040-COA, 2023 WL 3190920, at *4 (¶27) (Miss. Ct. App. May 2, 2023) (citing *Stuckey v. The Provident Bank*, 912 So. 2d 859, 869 n.5 (Miss. 2005) (holding that those involved in a case "should not complain about the consequences when they consciously fail to adhere to our trial judges' orders")).

¶31. In accordance with our rule that "courts must expect compliance with their orders, our law recognizes any violation of an order comes at great risk." *Id*. at (¶30). Further, "[a] court has the inherent power to impose sanctions in order to protect the integrity of the judicial process." *Id*. (quoting *Barrett v. Jones, Funderburg, Sessums, Peterson & Lee LLC*, 27 So. 3d 363, 370 (¶25) (Miss. 2009)). "[W]here there is no specific authority for imposing sanctions, courts have an inherent power to protect the integrity of their processes, and may impose sanctions in order to do so." *Id*. (citing *Wyssbrod v. Wittjen*, 798 So. 2d 352, 368 (¶58) (Miss. 2001)); *see also Ladner v. Ladner*, 436 So. 2d 1366, 1370 (Miss. 1983) (holding that sanctions may be imposed "even without a prior court order").

¶32. In the present case, there should have been no need for the State to exert 27.25 hours (in addition to the time spent by the petitioner) to get a report that it had already paid Macvaugh to produce and that was due three years earlier. Because of the repeated delays

19

perpetuated by Macvaugh that required the State and the court to expend time to rectify, it was well within the trial court's discretion to sanction the expert by requiring payment of the State's attorney's fees in the amount of $1,790.75. Accordingly, we affirm the trial court's order requiring Macvaugh to pay the State's attorney's fees.

## CONCLUSION

¶33. In this case, the trial court applied the correct legal standards to "control the courtroom" and "efficiently move matters along[.]" *Donaldson*, 336 So. 3d at 1106 (¶17). The disgorgement order in this case was one of several reasonable decisions the court could have made and was a properly authorized sanction. *See Smith*, 265 So. 3d at 143 (¶5). The May 7, 2018 hearing did not rise to the level of contempt proceedings. Thus, no separate contempt petition or Rule 81 summons was required in this case. The trial court had the authority and discretion to order a disgorgement of funds paid to Macvaugh for the report he failed to timely provide. The court also had the authority and discretion to award attorney's fees for the time the State spent attempting to retrieve the reimbursement. The trial court did not abuse that discretion. Accordingly, this Court affirms the award of sanctions and the award of attorney's fees against Macvaugh.

¶34. **AFFIRMED.**

**CARLTON, P.J., AND McCARTY, J., CONCUR. BARNES, C.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WILSON, P.J., McCARTY AND SMITH, JJ.; McDONALD, J., JOINS IN PART. McDONALD AND SMITH, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., AND LAWRENCE, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**

**BARNES, C.J., SPECIALLY CONCURRING:**

¶35. I concur with the majority's ruling to affirm the court's award of sanctions and attorney's fees. However, because "these proceedings did not rise to the level of contempt proceedings," as acknowledged by the majority, I find that the discussion distinguishing civil and criminal contempt proceedings and the requirement for a Rule 81 summons is dicta and should not be considered controlling precedent. *See Methodist Healthcare-Olive Branch Hosp. v. McNutt*, 323 So. 3d 1051, 1061 n.4 (Miss. 2021) (noting that a case's "pronouncement was a dictum because it was not necessary to the court's decision" and, therefore, "has no precedential value whatsoever"); *C.W. v. Lamar County*, 250 So. 3d 1248, 1254 (¶19) (Miss. 2018) ("It is axiomatic that statements which are unnecessary to a court's ruling are dicta." (citing *McKibben v. City of Jackson*, 193 So. 2d 741, 744 (Miss. 1967))). While there may be a case in which this Court may be asked to make such a distinction, this is not that case.

**WILSON, P.J., McCARTY AND SMITH, JJ., JOIN THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**